# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 104

### OCTOBER TERM, A.D. 2016

October 28, 2016

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

TOMMY HOOD,

Appellant
(Petitioner),

v.                                              S-16-0058

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Appellant/Petitioner:*
Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

*Representing Appellee/Respondent:*
Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; and Kelly Shaw, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Tommy Hood suffered a neck injury at work in 2008.  The Wyoming Workers' Safety and Compensation Division (Division) awarded him benefits related to that injury, and paid his associated medical bills.  In April 2011, Mr. Hood began experiencing short losses of consciousness, known as "syncope," which he attributes to treatment of his neck injury.  The Division paid for attempts to diagnose the cause of Mr. Hood's black outs, and paid for treatment of injuries to his back, thumb, wrist and ear suffered when he fell during syncope events.  Mr. Hood then sought Division approval for lower back surgery to treat another injury he received from such a fall.  The Division denied approval, and the Medical Commission (Commission) upheld the Division's determination that Mr. Hood had not proven that the need for lower back surgery was directly related to the 2008 neck injury.  Mr. Hood appealed to the district court, which affirmed the Commission. He now appeals the district court's determination.

[¶2]    We conclude substantial evidence supports the Commission's decision and the Commission appropriately considered the evidence before it.  We further find that the Division's prior uncontested awards of benefits related to syncope do not relieve Mr. Hood of the burden of proving his new claim was directly related to a compensable injury.  Consequently, we affirm.

## ISSUES

[¶3]    Mr. Hood states the issues as follows:

> I.      Whether the Medical Commission erred as a matter of law in refusing to estop the Division from denying a preauthorization request for lumbar spine surgery.

> II.     Whether the Medical Commission acted arbitrarily and capriciously in ignoring Hood's testimony about causation.

The Division phrases the issues as:

> I.      Did the Division's decision to pay Hood some benefits estop it from denying future benefits related to syncope?

> II.     Did the Medical Commission act arbitrarily and capriciously when it denied Hood benefits after determining that the benefits requested for injuries

1

sustained during a syncopal episode [were] unrelated to his workplace injury?

**FACTS**

[¶4]    In December 2008, Mr. Hood was injured while working on a drilling rig. A co-worker knocked a chunk of ice off the rig, and it fell, hitting Mr. Hood on the head and injuring his neck. His physician put him on "light duty" at work, and recommended fusion surgery on vertebrae in Mr. Hood's neck. Mr. Hood underwent the cervical fusion surgery on March 19, 2010. The surgery went "fine," but Mr. Hood developed an infection in his elbow at the site of an intravenous needle used during the surgery. Eight to twelve weeks later something in Mr. Hood's neck "popped" during physical therapy, and he experienced pain and "grinding" in his neck.

[¶5]    Throughout 2010, Mr. Hood continued to suffer from neck pain, shoulder pain, and left arm pain. Physicians disagreed about whether additional surgery was necessary at the site of his neck fusion.

[¶6]    On April 23, 2011, over a year after his neck surgery, Mr. Hood experienced a "syncope" episode, where he suddenly passed out. Mr. Hood reported that he turned his head, heard a "pop" in his neck, and woke up on the floor. He fell when he passed out, suffering a compound fracture of his thumb, cracking his wrists and damaging his ear drum. The Division paid for the medical care required for those injuries, and no one contested the payment. Mr. Hood continued to suffer from syncope episodes, although he is unable to identify a specific number of times he passed out. Medical records from one of his primary physicians indicate he experienced syncopal episodes on May 18, 2011, December 26, 2011, and February 11, 2013. Mr. Hood testified in February 2015 that his most recent episode was on an unknown date in 2014. He also testified that he had never passed out before his March 2010 neck surgery.

[¶7]    Both the Division and Mr. Hood's physicians attempted to learn why he was passing out. He saw numerous health care providers, including several specialists, but none were able to determine a cause. During this time, the Division paid for all of the treatment Mr. Hood received for injuries suffered when he passed out and fell, and it paid for all of the diagnostic tests and evaluations conducted in an attempt to determine the cause of the syncope.

[¶8]    Mr. Hood sought medical attention for lower back pain on March 25, 2013, which apparently resulted from a fall associated with the syncope on February 11, 2013. Several doctors attempted to treat the lower back pain conservatively, without success. In August 2013, lumbar discography revealed disc tears in Mr. Hood's lower back, and doctors recommended surgery. Mr. Hood sought authorization for the lower back surgery from the Division. The Division arranged for two physicians to independently

2

review Mr. Hood's medical records. Each of those physicians reported that they could not identify any cause for the syncopal episodes. Each concluded that there was no diagnostic or pathologic finding in Mr. Hood's medical records which suggested that the syncopal episodes were a consequence of either Mr. Hood's neck injury or the surgery on his neck. As a result, the Division denied Mr. Hood's request for surgery on his lower back, finding that the medical evidence did not show the surgery was "medically necessary in relation to the originally claimed cervical work injury."

[¶9] Mr. Hood objected to the Division's decision and requested a contested case hearing before the Commission. The Commission reviewed testimony and medical records from several doctors, including Dr. Hammerberg, a board certified neurologist who reviewed Mr. Hood's medical records. Dr. Hammerberg testified about various causes for syncope. He reached the same conclusion as every other doctor involved in Mr. Hood's case. He said, "And all I can say is that it's not clear to me at all why he was passing out; and, number two, I couldn't imagine any way the surgery could have led to the problem in the first place."

[¶10] From the contested case hearing the Commission found "this is the type of case where the opinion of expert medical providers is primarily determinative of causation. Unfortunately, none of the experts, including Dr. Ruttle, Dr. Kaplan, Dr. Wheeler, Dr. Schubert or Dr. Fox have been able to causally relate the syncopal episodes to the work-related injury or to complications from the original cervical fusion procedure." The Commission then concluded that "Mr. Hood failed to provide sufficient credible proof that the syncope episodes are due to the work injury or the cervical fusion that was provided as a result of the work injury. The mere presence of a temporal relationship between the syncope episodes and the cervical fusion is insufficient to explain the cause of the incidents or to relate them to the work injury in question." The Commission also concluded that the Division's uncontested payment of Mr. Hood's prior medical expenses related to syncope did not preclude it from challenging future benefits.

[¶11] Mr. Hood filed a petition for review with the district court, and the district court affirmed. He then filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶12] Judicial review of an agency's decision is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2015):

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following

3

determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶13] Under § 16-3-114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citations omitted).

[¶14] When an agency determines the claimant did not satisfy his burden of proof, we apply the following standard:

If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision

4

to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860-61 (Wyo. 1994);*Spiegel*, 549 P.2d at 1178 (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale*, ¶ 22, 188 P.3d at 561.

[¶15] The arbitrary and capricious standard is also available as a "'safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard." *Id.*, ¶ 23, 188 P.3d at 561, quoting *Newman*, ¶ 23, 49 P.3d at 172. In all cases, we review an agency's conclusions of law *de novo* and affirm only when the agency's conclusions are in accordance with the law. *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010); *Dale*, ¶ 26, 188 P.3d at 561-62.

## DISCUSSION

### 1.  *Substantial Evidence/Abuse of Discretion/Causation*

[¶16] The Commission found that Mr. Hood failed to prove "that the syncope episodes are due to the work injury or the cervical fusion that was provided as a result of the work injury." "A workers' compensation claimant has the burden of proving each of the essential elements of his claim by a preponderance of the evidence." *Johnson v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2014 WY 33, ¶ 21, 321 P.3d 318, 323 (Wyo. 2014). "As a part of that burden, the claimant must prove a causal connection exists between a work-related injury and the injury for which worker's compensation benefits are being sought." *Dale*, ¶ 35, 188 P.3d at 563. Consequently, Mr. Hood had the burden of proving a causal connection between his original work-related injury and the injury to his lower back. In an attempt to prove that connection, Mr. Hood notes that his original neck injury required surgery. Because he never had syncope episodes before the neck surgery, Mr. Hood claims the surgery or its complications must have caused his syncope.

Then, he links his lower back injury to the original work-related injury by claiming it occurred when he fell during a syncope episode.

[¶17] The Commission found that no expert had been able to "causally relate the syncopal episodes to the work-related injury or to complications from the original cervical fusion procedure." Mr. Hood does not challenge that finding, but instead agrees that it is true. He claims, however, that the Commission acted arbitrarily and capriciously by ignoring Mr. Hood's own testimony about causation. That testimony consisted solely of Mr. Hood's statement that he never passed out before his neck surgery, that he heard a "pop" in his neck the first time he passed out, and that he suffers from ongoing syncopal events afterward.

[¶18] Contrary to Mr. Hood's assertion, the Commission clearly considered and weighed Mr. Hood's testimony. It referenced his testimony and recognized Mr. Hood as credible. However, the Commission concluded from the evidence that "the causes of syncopal episodes are numerous and complex," and that this was "the type of case where the opinion of expert medical providers is primarily determinative of causation." This case does not remotely approach the simple case where a medical condition is so "immediately and directly or naturally and probably" the result of a workplace incident that expert medical evidence about causation is unnecessary. *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 118, ¶ 33, 259 P.3d 1161, 1169 (Wyo. 2011); *Thornberg v. State ex rel. Wyo. Workers' Comp. Div.,* 913 P.2d 863, 867 (Wyo. 1996).

[¶19] Although Mr. Hood complains that the Commission disregarded his testimony, he does not assert that expert testimony was not required to determine the cause of his syncope. Instead, he simply claims that somehow the Commission should have accepted his non-expert opinion and disregarded the unanimous expert opinion of numerous doctors. The medical experts in this case were a physical medicine specialist, two neurologists, a neurosurgeon, a retired orthopedist, a cardiologist and Mr. Hood's treating physician. None of them found a causal connection between Mr. Hood's neck injury or neck surgery and his syncope. Because the record establishes that the potential causes of syncopal episodes are numerous and complex, and because Mr. Hood's situation is obviously medically complex, the Commission did not abuse its discretion by accepting the evidence from every medical expert and discounting Mr. Hood's contrary non-expert opinion. There clearly was substantial evidence supporting the Commission's determination that Mr. Hood had not proven a causal connection.

### 2. Estoppel

[¶20] In his second challenge to the Commission's decision, Mr. Hood claims that he should not be required to prove a causal connection between his syncope and the original work injury because the Division previously approved payment of medical expenses

related to his syncope. He asserts that the Division's uncontested payment of those medical expenses amounts to a final and binding determination that his syncope is directly related to his 2009 work injury. Consequently, according to Mr. Hood, the Division is collaterally estopped from asserting a lack of causation.

[¶21] The principle of collateral estoppel bars relitigation of previously litigated issues, and is based on the common-law principle that "a right, question or fact put in issue, and directly determined by a court of competent jurisdiction, cannot be disputed in a subsequent suit by the same parties or their privies." *Tenorio v. State ex rel. Wyo. Workers' Comp. Div.*, 931 P.2d 234, 238 (Wyo. 1997) (citation omitted). This same principle applies to issues adjudicated before an administrative agency. *Martinez v. State ex rel. Wyo. Workers' Comp. Div.*, 917 P.2d 619, 622 (Wyo. 1996). Mr. Hood asserts that the Division's uncontested payment of claims related to syncope amounts to a binding adjudication that his syncope is the result of his neck injury or neck surgery.

[¶22] In the context of workers' compensation benefits, however, we have specifically held that the Division's award of uncontested benefits does not establish that future benefits cannot be challenged. An uncontested award of benefits does not relieve a claimant of the burden of proving causation for future claims. We addressed this issue in *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2013 WY 62, 301 P.3d 137 (Wyo. 2013) and stated:

> The Division's uncontested award of benefits is not a final adjudication that precludes the Division from challenging future benefits. *Tenorio v. State ex rel. Wyoming Workers' Compensation Div*., 931 P.2d 234, 239 (Wyo. 1997). The statutory language of the Wyoming Workers' Compensation Act confers finality on the benefits paid to the employee through uncontested determinations, subject to the exceptions found in Wyo. Stat. Ann. § 27-14-605. *Id*. [at 240]. The statutory language, however, does not guarantee a claimant future benefits on the basis of a prior award nor does public policy favor the payment of an unjustified worker's compensation claim. *Id*. Therefore, an employee/claimant must prove that he was entitled to receive benefits for all outstanding claims despite previous awards for the same injury. *Id*. [at 239].

*Id.,* ¶ 27, 301 P.3d at 148.

[¶23] The Commission correctly applied the Wyoming law of collateral estoppel as it applies to claims like Mr. Hood's. The fact that the Division previously paid uncontested medical claims related to Mr. Hood's syncope does not preclude the Division from

contesting the causation of the syncope for purposes of future benefits. To obtain approval of his proposed lower back surgery, Mr. Hood still had to prove that the need for surgery was causally connected to his original work injury and he did not do so.

[¶24] Affirmed.