# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 39

**OCTOBER TERM, A.D. 2021**

**March 22, 2022**

RHONDA BOYLEN,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' COMPENSATION
DIVISION,

Appellee
(Respondent).

S-21-0200

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*
    Donna D. Domonkos, Cheyenne, Wyoming.

*Representing Appellee:*
    Bridget L. Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney
    General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior
    Assistant Attorney General.

*Before FOX, C.J., and DAVIS[*], KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*[*]Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of*
*the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to*
*act on this matter on January 18, 2022.*

1

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   Rhonda Boylen, a sales associate at Flaming Gorge Harley-Davidson, suffered a lower back injury the evening of May 6, 2019, while at home, following two days off work. She was standing in her kitchen and turned slightly to the left when her back "exploded." When she sought medical treatment the next day, she attributed her injury to moving heavy motorcycles at work.  She filed a claim with the Department of Workforce Services, Workers' Compensation Division (Division) for benefits related to her May 6 injury.  The Division denied her request.  Following a contested case hearing the Office of Administrative Hearings (OAH) concluded that Ms. Boylen did not satisfy her burden of proof.  On appeal Ms. Boylen argues she proved that her May 6 injury was a second compensable injury, but OAH failed to consider it as such.  We affirm.

## *ISSUES*

[¶2]   Ms. Boylen raises a single issue, which we rephrase as two:

> I. Did OAH erroneously fail to apply the second compensable injury rule?
>
> II. Was there substantial evidence to support OAH's conclusion that Ms. Boylen failed to prove her May 6 injury was caused by the May 3 injury?

## *FACTS*

[¶3]   The facts are straightforward and not in dispute.

[¶4]   Ms. Boylen, a sales associate at Flaming Gorge Harley-Davidson, was moving a heavy motorcycle on May 3, 2019, when her back grabbed and her legs felt weak.  She did not report this incident to her employer.  Nor did she report the incident while at work the following day.  May 5 and 6 were Ms. Boylen's days off.  At about 9:00 p.m. on May 6, she was standing in her kitchen and turned slightly to the left, away from the sink, when she felt excruciating pain.  She sought medical treatment the following day from chiropractor, Dr. Ty Quickenden, D.C.  Due to her extreme pain Dr. Quickenden stopped his examination and referred her to Red Desert Insta-Care.  Over the next four months, Ms. Boylen was treated for radiating back pain, numbness, and tingling, by Dr. Quickenden; Alliance Physical Therapy; and Drs. Eric Harris, M.D. and Michael Kaplan, M.D., at Premier Bone & Joint Centers.

[¶5]   Ms. Boylen filed a report of injury on May 16, 2019, stating that she suffered a work injury on May 6.  Her report stated, "I was moving a heavy bike to a location, when I felt

1

my lower back grab and went weak."[1]  The Division denied Ms. Boylen her requested benefits on June 18, 2019, after receiving and reviewing a copy of her medical records and job description.  Ms. Boylen timely objected, and the Division referred the matter to OAH.

[¶6]    OAH conducted a contested case hearing by video on April 30, 2020.  Ms. Boylen relied on her own hearing and deposition testimony, and the deposition testimony of Dr. Quickenden.  After hearing the testimony and reviewing the evidence, OAH generally concluded that Ms. Boylen "failed to prove she suffered a compensable injury as that term is defined by Wyo. Stat. Ann. § 27-14-102(a)(xi)[ ]."[2]  It more specifically found and concluded that "the medical evidence and [Ms.] Boylen's testimony fell short and was not persuasive", and that "Dr. Quickenden simply did not provide sufficient testimony to connect the May 3, 2019 and May 6, 2019 incidents."  Ms. Boylen appealed first to the district court, which affirmed the OAH decision, and now to this Court.

## STANDARD OF REVIEW

[¶7]    We review the appeal of an administrative action "as if it had come directly from the agency, giving no deference to the district court's decision." *Mirich v. State ex rel. Bd. of Trs. of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 15, 481 P.3d 627, 632 (Wyo. 2021) (quoting *Sweetwater Cnty. Sch. Dist. No. One v. Goetz*, 2017 WY 91, ¶ 23, 399 P.3d 1231, 1235 (Wyo. 2017)).  The Wyoming Administrative Procedure Act, § 16-3-114(c) governs our review of the agency's decision:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.  The reviewing court shall:
>
> . . . .

---

[1] After explaining that the Harley-Davidson dealership was closed on Sundays and Mondays, Ms. Boylen testified that this "initial part" of her injury happened at work on May 3.

[2] Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2021) states, in relevant part:

> "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

2

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>> (B) Contrary to constitutional right, power, privilege or immunity;
>> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>> (D) Without observance of procedure required by law; or
>> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2021).

[¶8]   A workers' compensation claimant must prove all essential elements of her claim by a preponderance of the evidence. *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 9, 503 P.3d 23, 28 (Wyo. 2022) (citation omitted). Where, as here, both parties submit evidence, we apply the substantial evidence test to fact findings. *Id.* (citation omitted). And when reviewing an agency's decision that a claimant did not satisfy her burden of proof,

> we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860–61 (Wyo. 1994); *Board of Trustees, Laramie County School Dist. No. 1 v. Spiegel*, 549 P.2d 1161, 1178 (Wyo. 1976) (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Hood v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2016 WY 104, ¶ 14, 382 P.3d 772, 776 (Wyo. 2016) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008)).

## *DISCUSSION*

### I.  *OAH properly considered whether Ms. Boylen's May 6, 2019 injury was caused by the May 3, 2019 injury.*

[¶9]    Ms. Boylen did not directly raise the second compensable injury rule in her claim to the Division or in her case to OAH.  In appealing OAH's decision, however, she argues that OAH should have considered her May 6 injury "as a second compensable injury and [its] failure to do so is not in accordance with law."

[¶10]  In *Carabajal v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 119, ¶¶ 19–21, 119 P.3d 947, 953–54 (Wyo. 2005) we held that this argument is not foreclosed on appeal so long as the hearing examiner heard sufficient evidence of the claimant's theory of the case to be on alert she should apply the second compensable injury rule.  The Division acknowledges our ruling in *Carabajal* and does not challenge its application here. We therefore proceed to consider Ms. Boylen's second compensable injury argument.

[¶11] We recently explained, "[t]he second compensable injury rule provides that a subsequent injury may be compensable when 'an initial compensable injury ripens into a condition requiring additional medical [treatment][,]'" and that a "subsequent injury or condition is compensable if it is causally linked to the initial compensable work injury." *Ross*, ¶ 13, 503 P.3d at 29 (citations omitted).  Our description of the required causal connection between the first and second injuries has varied slightly from case to case but in every case "[t]he employee must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first." *Id.* (citation omitted).

[¶12]  The application of the second compensable injury rule to the facts of this case gives us pause, as Ms. Boylen's claimed May 3 injury—the first injury—went unreported, required no treatment, and was never determined to be compensable.  Then, just three days passed before the reported second injury occurred.  Thus, the second injury can hardly be described as a ripened condition from an initial compensable injury that required **additional** medical treatment.  Even Ms. Boylen acknowledges that her case is different from others implicating the second compensable injury rule. *Cf. Ross*, 2022 WY 11, 503 P.3d 23; *Hardy v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 42, 394 P.3d 454 (Wyo. 2017); *Hood*, 2016 WY 104, 382 P.3d 772; *Bodily v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2014 WY 39, 320 P.3d 240 (Wyo. 2014); *Carabajal*, 2005 WY 119, 119 P.3d 947.

4

[¶13]  In the end, however, even if we could properly characterize the May 6 injury as a second injury, the record makes clear OAH did not ignore Ms. Boylen's theory of the case or apply the wrong standard.  To the contrary, OAH acknowledged that "[t]he conundrum in this case is whether or not the May 3rd incident led to and caused the May 6th incident."  To resolve that conundrum, OAH carefully considered Ms. Boylen's medical records, her testimony, and Dr. Quickenden's opinion that the May 3 injury and the May 6 injury were connected.  And only after such consideration did OAH conclude Ms. Boylen failed to prove the necessary, direct causal connection.  That OAH did not specifically articulate the "second compensable injury" in its decision is of no consequence.  *See Kenyon v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2011 WY 14, ¶ 20, 247 P.3d 845, 851 (Wyo. 2011).  The record and our precedent thus refute Ms. Boylen's claim that OAH failed to act in accordance with law.

## II.  *Substantial evidence supports OAH's conclusion that Ms. Boylen failed to demonstrate that her May 6, 2019 injury was caused by the May 3, 2019 injury.*

[¶14]  Ms. Boylen asserts she "proved by a preponderance of the evidence an injury occurred to her back on May 3, 2019, when she was moving a heavy motorcycle while performing her work duties[,]" that she "did not have any problems with her back prior to May 3," and that she "would not have had the injury to her back on [May 6] if she had not injured her back on [May 3] while at work."  She relies on notes of her statements to Dr. Quickenden and other medical providers at Red Desert Insta Care and Premier Bone & Joint Centers, her deposition and hearing testimony, and Dr. Quickenden's deposition testimony, as proof that the twisting injury at home on May 6 "was causally related to the original work-related injury" on May 3.  She further claims her burden of proof was satisfied because the Division failed to contradict Dr. Quickenden's testimony or present evidence to show what else might have caused the May 6 injury.  According to Ms. Boylen, "[t]he doctor has to rely on the patient's history to deduce an opinion" and her "history has not been refuted."

[¶15]  The test is whether OAH could reasonably conclude that Ms. Boylen failed her burden of proof based on all the evidence before it.  *See Hood*, ¶ 14, 382 P.3d at 776.  Our thorough review of the record leads us to conclude the record contains substantial evidence to support OAH's decision to reject the evidence on which Ms. Boylen relies.  OAH identified inconsistencies in Ms. Boylen's reports and explained its reasons for discounting Dr. Quickenden's opinion based on factors contained in the record.  Consequently, its conclusion is sustainable under the substantial evidence test.  *See id.*

[¶16]  For example, OAH acknowledged Ms. Boylen's testimony that she had no prior back problems, she believed the proximity in time between the May 3 and 6 incidents established cause, and she experienced no intervening activity or accident.  However, it also recognized that Ms. Boylen described the May incident as minor and didn't think much of it.  She finished work that day, worked the next day, and did not seek any medical

5

attention during her two days off. When she visited Dr. Quickenden and Insta-Care on May 7, she stated the pain started at home on May 6. She wondered whether her pain resulted from moving heavy motorcycles but she did not attribute her pain to the incident on May 3. And in her written statement on May 29, Ms. Boylen reported there was nothing out of the ordinary between May 3 and 6. The medical reports in May, June, and July never indicated Ms. Boylen suffered pain, stiffness, or soreness between the two incidents. Only in later reports and during her deposition and hearing testimony did Ms. Boylen indicate she was stiff, sore, and fatigued during the intervening period. Accordingly, the record supports OAH's concern that her recounting of events was somewhat inconsistent and its finding that Ms. Boylen's later complaints benefitted from hindsight and therefore lacked credibility.

[¶17] As to Dr. Quickenden's testimony, OAH may "disregard an expert opinion if [it] finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant." *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo. 2005) (citations omitted). OAH explained that Dr. Quickenden's strong and unrefuted opinion as to the causal connection between the May 3 incident and the May 6 injury lacked a reasoned medical explanation how Ms. Boylen progressed from a minor injury, with no significant symptoms for three days, to an explosion of muscle spasms. OAH also found Dr. Quickenden's opinion lacking a medical basis whether her twisting motion on May 6 could have caused pain without the May 3 incident having occurred, or how the acute onset of symptoms could occur several days after the initial injury in the absence of "intervening continuing or worsening symptoms." The record substantiates OAH's explanation for why it discounted Dr. Quickenden's opinion that the May 3 incident caused Ms. Boylen's May 6 injury, in that the evidence shows Dr. Quickenden relied on Ms. Boylen's recount of the events and ostensible causal connections to support his opinion rather than medical or physiological facts.

### CONCLUSION

[¶18] The law does not require OAH to reference the "second compensable injury" rule in its decision, and the record demonstrates OAH acted in accordance with law when it evaluated the causal connection between Ms. Boylen's May 6, 2019 injury and her unreported May 3, 2019 injury. The record also contains substantial evidence to support OAH's conclusion that Ms. Boylen failed to demonstrate that her May 6 injury was caused by her May 3 injury. We therefore affirm.

6