# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 166

OCTOBER TERM, A.D. 2022

*December 30, 2022*

FERNANDO RODRIGUEZ,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-22-0131

*Appeal from the District Court of Carbon County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*
*Herbert K. Doby, Torrington, Wyoming.*

*Representing Appellee:*
*Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Fernando Rodriguez suffered a left wrist and right knee injury after falling from a truck in a 2007 work accident. After years of treatment, he claimed his pain persisted and spread throughout his body, leaving him unable to work. He applied for permanent total disability benefits under the odd-lot doctrine in 2019, which the Department of Workforce Services denied. After a contested case hearing, the Medical Commission upheld the denial, finding Mr. Rodriguez did not meet his burden to prove a degree of obvious physical impairment. The district court affirmed as do we.

## *ISSUES*

[¶2]    Mr. Rodriguez argues two issues on appeal which we rephrase:

> 1. Was there substantial evidence to support the Commission's determination that Mr. Rodriguez failed to show his degree of obvious physical impairment, coupled with other facts, qualified him for odd-lot treatment?
>
> 2. Were the Commission's credibility determinations arbitrary and capricious?

## *FACTS*

[¶3]    Mr. Rodriguez injured his left wrist, left shoulder, and right knee after falling out of a truck bed while employed at Gregory & Cook Construction in 2007. Mr. Rodriguez had two wrist surgeries, but was released to light-duty work within a few days of his first surgery, with lifting restrictions on his left wrist. Mr. Rodriguez did not return to work despite his employer's accommodations and was terminated weeks later.

[¶4]    Mr. Rodriguez applied for temporary disability benefits and underwent two impairment ratings for his injuries, which assigned him a two- to three-percent impairment rating. He was awarded temporary partial disability and temporary total disability benefits between November 2007 and April 2008 for injuries to his left wrist, left shoulder, and right knee. The Medical Commission (Commission) determined his other complaints; injuries to his head, neck, face, back, and heart, were unrelated to his workplace injury and therefore not compensable.

[¶5]    In the following months and years, Mr. Rodriguez continued to report pain throughout his body. He has not worked since the accident and has not looked for work. He has consistently seen Dr. Harlan Ribnik, a pain specialist, for pain management. Despite extensive testing, no objective medical evidence of injury was found to support Mr. Rodriguez's complaints of pain.

1

[¶6]   In August of 2019, Mr. Rodriguez applied for permanent total disability (PTD) benefits under the odd-lot doctrine. In his application, he reported he was unable to work because standing, sitting, or walking caused him extensive pain and he could not lift, bend over, or concentrate. Mr. Rodriguez is a fifty-three-year-old Mexican immigrant who lives in Rawlins, Wyoming. He speaks limited English, has a sixth-grade education, and has worked full-time in labor-intensive jobs since he was fifteen years old. Mr. Rodriguez asserts, due to his injury and limited qualifications, he is unable to work in the Rawlins community and thus qualified for odd-lot treatment.

[¶7]   The Department of Workforce Services, Workers' Compensation Division (Division) denied Mr. Rodriguez's PTD application. He requested a hearing before the Medical Commission which upheld the denial. The Commission concluded Mr. Rodriguez "failed to show by a preponderance of evidence that 'the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age' qualify him for odd-lot treatment." He appealed the ruling to the district court which also affirmed the Commission's denial. Mr. Rodriguez now appeals to this Court.

## STANDARD OF REVIEW

[¶8]   We review the appeal of an administrative action without deference to the district court's conclusions. *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 8, 503 P.3d 23, 27 (Wyo. 2022) (citing *Mirich v. State ex rel. Bd. of Trs. of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 15, 481 P.3d 627, 632 (Wyo. 2021)). An agency action may be set aside under certain circumstances:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
> . . .
>> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>>> (A)  Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>> (B)  Contrary to constitutional right, power, privilege or immunity;

2

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2021).

[¶9] A worker's compensation claimant has the burden to prove all essential elements of a claim by a preponderance of the evidence. *Ross*, 2022 WY 11, ¶ 9, 503 P.3d at 28 (citing *Matter of Worker's Comp. Claim of Vinson*, 2020 WY 126, ¶ 28, 473 P.3d 299, 309 (Wyo. 2020)). When both parties submit evidence, we apply the substantial evidence test to factual findings, which requires this Court to examine the entire record for "relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Id.* (quoting *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 23, 448 P.3d 834, 843 (Wyo. 2019)). The agency may disregard certain evidence if it explains its reasons for doing so based on credibility determinations. *Boylen v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 39, ¶ 8, 506 P.3d 765, 769 (Wyo. 2022) (citing *Hood v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2016 WY 104, ¶ 14, 382 P.3d 772, 776 (Wyo. 2016)).

[¶10] This Court will not substitute the agency's judgment with its own unless the agency's decision is "contrary to the overwhelming weight of the evidence on record." *Watkins v. State ex rel. Wyo. Med. Comm'n*, 2011 WY 49, ¶ 16, 250 P.3d 1082, 1086 (Wyo. 2011). We also review an agency decision under the arbitrary and capricious standard to catch "potential mistakes such as inconsistent or incomplete findings of fact[.]" *In re Pickens*, 2006 WY 54, ¶ 11, 134 P.3d 1231, 1235 (Wyo. 2006) (quoting *Padilla v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 10, ¶ 6, 84 P.3d 960, 962 (Wyo. 2004)).

[¶11] We review an agency's conclusions of law de novo. *Ross*, 2022 WY 11, ¶ 11, 503 P.3d 23, 29 (citing *Triplett v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2021 WY 118, ¶ 35, 497 P.3d 903, 911 (Wyo. 2021)).

## DISCUSSION

[¶12] Mr. Rodriguez argues he is entitled to PTD benefits under the odd-lot doctrine. The doctrine allows a claimant who is not totally incapacitated but is so handicapped he "will not be employed regularly in any well[-]known branch of the labor market" to receive PTD benefits. *Ross*, 2022 WY 11, ¶ 20, 503 P.3d at 30 (quoting *Schepanovich v. U.S. Steel Corp.*, 669 P.2d 522, 525 (Wyo. 1983)). However, the claimant must demonstrate he is incapacitated "from performing work at any gainful occupation for which [he] is

3

reasonably suited by experience or training." *Id.* The claimant must make a prima facie showing: 1) he was disabled by a work-related injury and is now unable to work at his previous job; and 2) "'the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age' qualify him for odd[-]lot treatment." *Pickens*, 2006 WY 54, ¶ 14, 134 P.3d at 1236 (quoting *City of Casper v. Bowdish*, 713 P.2d 763, 765 (Wyo. 1986)).

### I. Substantial evidence supported the Commission's denial.

[¶13]   It is undisputed Mr. Rodriguez was unable to return to his previous heavy-labor job and therefore the first prong is met. The dispositive issue then, is whether substantial evidence supported the Commission's determination that Mr. Rodriguez was not eligible for odd-lot treatment because he failed to show an ascertainable degree of obvious physical impairment. To satisfy this prong, a claimant must show: 1) he has a degree of obvious physical impairment; and 2) that degree of obvious physical impairment, coupled with other factors, make him de facto unemployable. *See Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 28, ¶ 39, 297 P.3d 82, 93 (Wyo. 2013).

### A.    The Commission's Factual Findings.

[¶14]   After an extensive review of medical testimony, records, and reports, the Commission concluded "that there is no objective evidence by which to determine the 'degree of obvious physical impairment.'" We review the record as a whole for substantial evidence to support that conclusion.

#### 1.    Three IMEs find two- to three-percent impairment rating.

[¶15]   Mr. Rodriguez had three Independent Medical Evaluations (IMEs) that determined his impairment rating was between two and three percent and he could return to the workforce in some capacity.

<u>Dr. Kaplan</u>

[¶16]   Dr. Michael Kaplan conducted the first IME in April of 2008, approximately six months after Mr. Rodriguez's injury. He reviewed all of Mr. Rodriguez's medical history including his complaints of pain in his wrist, knee, neck, back, and shoulder, as well as headaches and nosebleeds. Dr. Kaplan found no objective evidence to support his neck, back, and shoulder pain, or his headaches and nosebleeds, and found little objective evidence to substantiate he was unable to work in any capacity. He gave Mr. Rodriguez a three-percent whole body impairment rating for the injuries sustained to his left wrist, left shoulder, and right knee. Dr. Kaplan cleared Mr. Rodriguez to return to light or medium work capacity.

4

### Dr. MacGuire

[¶17]  Dr. Anne MacGuire performed a second IME on June 2, 2008, where she found no evidence of a right knee or left shoulder injury but assigned a two-percent whole body impairment because of his left wrist injury. Dr. MacGuire also found significant symptom magnification and exaggeration in Mr. Rodriguez's pain evaluations. She released Mr. Rodriguez to work without restriction.

### Dr. Shay

[¶18]  Dr. Jed Shay performed a third IME on July 8, 2020, shortly after Mr. Rodriguez applied for PTD benefits. He extensively reviewed Mr. Rodriguez's medical history dating back to the injury. Dr. Shay's findings mirrored Dr. MacGuire's and Dr. Kaplan's; medical evidence did not support a degree of physical impairment or Mr. Rodriguez's complaints of pain. Mr. Rodriguez also showed signs of symptom magnification in testing. Dr. Shay released him to work without restriction. The Commission gave weight to Dr. Shay's medical opinion because he reviewed Mr. Rodriguez entire medical history, conducted a physical examination, and his opinion was supported by Dr. Kaplan and Dr. MacGuire, both of whom offered credible findings.

## 2.  Five failed FCEs for lack of effort.

[¶19]  Mr. Rodriguez was asked to perform five different Functional Capacity Evaluations (FCEs), each of which was invalidated. The first two FCEs were invalidated due to purposeful amplification of symptoms and a manipulated effort to influence the evaluation's results. The remaining FCEs were invalidated due to Mr. Rodriguez's lack of effort or his terminating the test prior to completion.

### Dr. Jeffres

[¶20]  Mr. Rodriguez saw Dr. Mary Jo Jeffres, a clinical psychologist, on December 18, 2013. Dr. Jeffres conducted a Psychological Evaluation as part of Mr. Rodriguez's application for Social Security benefits. Mr. Rodriguez once again terminated the evaluation early. Nevertheless, Dr. Jeffres diagnosed Mr. Rodriguez with a mild neurocognitive disorder due to traumatic brain injury (TBI) without reviewing his medical history or Mr. Rodriguez's previous MRI. No other medical doctor supported the TBI diagnosis and nothing in the record supports such a finding.

### Dr. Poyer

[¶21]  Dr. Melinda Poyer, a family practice physician, examined Mr. Rodriguez on December 18, 2013, to address pain complaints in his upper extremities, and neck, as well as headaches. Dr. Poyer was able to review portions of Mr. Rodriguez's medical history,

including Dr. Ribnik's records and records from an eye doctor and a physical therapist, but she was not privy to records from Dr. Kaplan or Dr. MacGuire, nor the MRI of Mr. Rodriguez's brain. Dr. Poyer diagnosed injuries to the upper extremities, but these injuries were previously determined unrelated to the workplace injury.

### Ms. Canada

[¶22] Ms. Charlene Canada is a certified rehabilitation counselor who conducted Mr. Rodriguez's vocational assessment on May 22, 2021. Her assessment concluded Mr. Rodriguez was unable to work in the Rawlins area because of his TBI diagnosis and his generalized pain, therefore making him eligible for odd-lot treatment. However, the Commission's conclusion rested on Mr. Rodriguez's failure to prove a degree of obvious physical impairment which made Ms. Canada's testimony carry little weight because the Commission did not reach the question whether Mr. Rodriguez was employable.

### Dr. Ribnik

[¶23] Dr. Ribnik, a pain specialist, has been Mr. Rodriguez's primary doctor for the last decade and has had recurring visits with Mr. Rodriguez to manage pain. Mr. Rodriguez was insistent that Dr. Ribnik sign off on his PTD application, yet Dr. Ribnik repeatedly refused until Mr. Rodriguez completed a valid FCE. Although Mr. Rodriguez never did complete a valid FCE, Dr. Ribnik acquiesced in 2019 because he felt "bullied" into certifying Mr. Rodriguez as permanently and totally disabled. Dr. Ribnik testified "It was put under my nose. And basically, Mr. Rodriguez insisted that I sign it off. So I acceded to his insistence." When asked whether Dr. Ribnik believed Mr. Rodriguez was permanently and totally disabled, Dr. Ribnik testified "I have to recant, to the extent that I think he could do something. . . . I have no idea what he could do." In sum, Dr. Ribnik testified he was unsure of what Mr. Rodriguez's physical impairment was, what he could do physically, and the validity of his subjective complaints.

**B. Substantial evidence supported the Commission finding Mr. Rodriguez did not have a degree of obvious physical impairment.**

[¶24] The Commission's twenty-eight-page decision detailed the evidence presented, findings of fact, conclusions of law, and ultimate determination. This Court must accept the Commission's decision if there is "relevant evidence which a reasonable mind might accept in support of its conclusions." *Pickens*, 2006 WY 54, ¶ 21, 134 P.3d at 1238 (citing *Cramer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 124, ¶ 10, 120 P.3d 668, 671 (Wyo. 2005)). Even if evidence can be interpreted differently, under the substantial evidence test this Court will not substitute its judgment for that of the Commission. *Id.*

[¶25] The Commission relied heavily on Dr. Shay who reinforced the positions of Dr. Kaplan and Dr. MacGuire that little objective medical evidence showed Mr. Rodriguez had a degree of obvious physical impairment caused by his work accident. It also relied on his five invalid FCE results, two of which found he purposefully amplified symptoms, to further support its conclusion Mr. Rodriguez's subjective complaints lacked credibility. Dr. Ribnik, his treating doctor, refused to certify Mr. Rodriguez's PTD application on several occasions but finally acquiesced because of consistent pressure from Mr. Rodriguez, despite his physical condition being unchanged from the time Dr. Ribnik first declined the certification. He also stated he was unsure of Mr. Rodriguez's physical limitations and whether Mr. Rodriguez's complaints were legitimate. Multiple doctors were unable to identify an injury and those that did were not offered the benefit of a complete medical record review and had to rely on subjective patient complaints rather than medical evidence. Based on this evidence, the Commission found that Mr. Rodriguez failed to show a degree of obvious physical impairment. A reasonable mind could accept this evidence to support the Commission's conclusion; therefore, there was substantial evidence to support the Commission's findings.

[¶26] Mr. Rodriguez argues his three-percent impairment rating and his release to work with limitations shows his degree of physical impairment. We disagree. Dr. Shay found in 2020 that Mr. Rodriguez had no physical impairment and could return to work, without restriction. Dr. MacGuire also released Mr. Rodriguez to work without restriction. The Commission determined his invalid FCEs and his impairment ratings showed an effort to affect the results of his examinations, and concluded his pain complaints were less reliable than objective medical findings. Because his accompanying medical records did not show a degree of obvious physical impairment, the Commission correctly concluded Mr. Rodriguez did not meet his burden to prove an objective medical injury.

[¶27] While Mr. Rodriguez was deemed unable to return to his previous employment, he still carried a burden to prove his degree of obvious physical impairment. While impairment ratings offer valuable evidence of what a patient can and cannot do, Mr. Rodriguez cannot rely solely on his two-percent impairment rating, without work restriction, to prove his degree of obvious physical impairment. *Pickens*, 2006 WY 54, ¶ 29, 134 P.3d at 1240 (holding it would be improper to grant PTD benefits to a claimant based on the claimant's impairment rating); *see also Stallman*, 2013 WY 28, ¶ 34, 297 P.3d at 92 (holding a claimant proved her degree of physical impairment by admitting a valid FCE, two impairment ratings, and medical records that support her claims of physical impairment). He failed to prove his degree of physical impairment because he did not present persuasive evidence of his degree of obvious physical impairment. He could not present a valid FCE, and his medical records did not support his alleged injuries and pain. Additionally, Mr. Rodriguez's main complaints, his generalized pain, headaches, etc., are injuries not causally related to his workplace accident, and he is barred from recovery for those injuries under the odd-lot doctrine. *Pickens*, 2006 WY 54, ¶ 31, 134 P.3d at 1241. There is not overwhelming evidence in the record to refute the Commission's finding that

7

Mr. Rodriguez failed to prove an ascertainable degree of physical impairment and therefore the finding will not be disturbed. Because Mr. Rodriguez failed to meet his burden to establish a degree of physical impairment, we need not consider whether his degree of physical impairment, coupled with other facts, makes him de facto unemployable.

## II. The Commission's credibility determinations were not arbitrary and capricious.

[¶28] The only remaining consideration is whether the Commission's weight and credibility decisions were arbitrary and capricious. We defer to an agency's credibility determinations if they are based on a rational premise. *McMasters v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 32, ¶ 71, 271 P.3d 422, 439 (Wyo. 2012). If "the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility . . . its decision will be sustainable under the substantial evidence test." *Boylen*, 2022 WY 39, ¶ 8, 506 P.3d at 769 (quoting *Hood*, 2016 WY 104, ¶ 14, 382 P.3d at 776). The Commission had a rational premise to disregard Mr. Rodriguez's subjective complaints, Dr. Jeffres' TBI diagnosis, and testimony from Dr. Poyer and Ms. Canada.

[¶29] The Commission found Mr. Rodriguez was not a credible claimant because experts found he consistently manipulated testing, exaggerated symptoms, and the Commission witnessed behavior at hearings and on video inconsistent with his complaints. In *McMasters*, the Court addressed a similar situation regarding the claimant's credibility. 2012 WY 32, ¶ 71, 271 P.3d at 439. There, the claimant broke his back after falling while working on an HVAC system and was unable to return to work in any capacity due to his physical impairment and other factors. *Id.* at ¶¶ 1, 3, 271 P.3d at 424-25. The Commission found Mr. McMasters' testimony lacked credibility because he made minimal efforts to return to work, provided inconsistent information to medical providers, and was observed sitting without distress for almost an hour longer than he claimed he could sit without pain. *Id.* at ¶ 72, 271 P.3d at 439. We rejected this conclusion because the record did not support the Commission's conclusions nor was its reasoning compelling, particularly because medical reports never questioned the validity of his complaints, and he had an "objectively verifiable physical injury" with pain "consistent with that injury." *Id.* at ¶¶ 73-76, 271 P.3d at 440.

[¶30] We also rejected the Commission's credibility determinations in *Moss* based on its own assessment of Mr. Moss' physical appearance at the hearing and his actions in a private investigator's video. *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 66, ¶¶ 30, 32-33, 232 P.3d 1, 9-10 (Wyo. 2010). We have previously cautioned the Commission against making medical diagnoses for multiple reasons. *See, e.g.*, *McMasters*, at ¶ 77, 271 P.3d at 441; *Moss*, 2010 WY 66, ¶ 33, 232 P.3d at 9-10 (finding a video of the claimant conducting certain tasks for short periods of time he previously claimed he was unable to do was not sufficient to disregard his testimony and subjective complaints). The

combination of reasons to discredit Mr. McMasters and Mr. Moss lacked a rational premise but that is not the case here.

[¶31] Several doctors documented that Mr. Rodriguez exaggerated pain or amplified symptoms; he failed several FCEs due to lack of effort and intentional manipulation; and video evidence belied his claims he was unable to perform certain tasks. He also lacked a verifiable physical injury to explain his complaints of pain. Therefore, unlike *McMasters*, there was evidence to question his subjective complaints and his credibility.

[¶32] The Commission did note that Mr. Rodriguez repeatedly turned his head at hearings and used both arms and he moved normally on video, counter to what he alleged he was capable of. We have cautioned the Commission against making "impromptu medical diagnoses and reminded [it] of its obligation to make its decision on the basis of the records and testimony entered into evidence." *McMasters*, 2012 WY 32, ¶ 77, 271 P.3d at 441; *Moss*, 2010 WY 66, ¶¶ 32-33, 232 P.3d at 9-10. However, although the Commission did make improper impromptu diagnoses based on reported behavior at past hearings and behavior on video, it did not solely rely on its own observations to make its credibility determinations. It considered doctors' reports questioning the validity of Mr. Rodriguez's subjective complaints, his invalid FCEs, and Dr. Ribnik's testimony. There was evidence presented that supported a finding Mr. Rodriguez lacked credibility and, although a portion of the Commission's reasoning was improper, ample evidence existed to support its credibility determination.

[¶33] The Commission gave less weight to Dr. Poyer and Dr. Jeffres' findings than the other doctors and disregarded some of their opinions. The agency may "disregard an expert opinion if . . . [it is] based upon an incomplete or inaccurate medical history provided by the claimant." *Boylen*, 2022 WY 39, ¶ 17, 506 P.3d at 771. In this case, the Commission made its determinations based on the lack of medical records available to the two doctors. They were not afforded the opportunity to review Mr. Rodriguez's entire medical history and were therefore unable to provide comprehensive diagnoses. The two gave credence to Mr. Rodriguez's subjective complaints which only further undermined their credibility.

[¶34] Finally, because Ms. Canada was not a medical doctor, the Commission was entitled to reject her testimony in determining whether Mr. Rodriguez met his burden of establishing his degree of physical impairment. *See id.* at ¶ 8, 506 P.3d at 769. The Commission's credibility determinations were rooted in a rational premise and are not arbitrary and capricious. Those without the ability to review all medical records were given less weight in their testimony than doctors who fully reviewed Mr. Rodriguez's medical history.

## *CONCLUSION*

[¶35] There was substantial evidence for the Commission to deny Mr. Rodriguez's application for PTD for lack of an obvious physical impairment. The Commission pointed to specific facts to support its credibility determinations and did not act arbitrarily and capriciously. The Commission's decision is affirmed.