# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 100

**APRIL TERM, A.D. 2022**

**August 19, 2022**

MARY F. McBRIDE,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-21-0296

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
Brittany Thorpe, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, JJ., and SHARPE, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]    In 2015, Mary McBride injured her back and left hip while working as a registered nurse.  After receiving a twelve percent permanent partial impairment rating, Ms. McBride applied for permanent partial disability benefits (PPD).[1]   Following a contested case hearing, the Office of Administrative Hearings (OAH) awarded Ms. McBride PPD benefits, finding that she had actively sought suitable employment given her health, education, training, and experience.   The district court reversed, concluding that Ms. McBride had not actively sought suitable work under Wyo. Stat. Ann. § 27-14-405(h).  She appeals the district court order.  We affirm the decision of the district court.

*ISSUE*

[¶2]    Was the OAH decision that Ms. McBride met the legal requirement of actively seeking work considering her health, education, training, and experience supported by substantial evidence and not arbitrary, capricious, or otherwise not in accordance with the law?

*FACTS*

[¶3]    Ms. McBride, a registered nurse, worked at Sheridan Manor.  In 2015, while transferring a resident from his bed to a wheelchair, she injured her back and left hip.[2]  Ms. McBride immediately reported her injuries and the Department of Workforce Services, Workers' Compensation Division (the Division) approved medical coverage for treatment of her thoracic and lumbar spine, left hip, and cervical spine injuries.  She attended physical therapy and continued working for a time, but her pain increased.  By November 2016, her treating physician, Dr. Michael Strahan, recommended that she retire from nursing, and Ms. McBride retired.  In December 2016, Ms. McBride applied for and received temporary total disability benefits.

[¶4]    In 2018, Ms. McBride received two independent medical evaluations.  The first evaluation was performed by Dr. Scott Johnston on April 26, 2018.  Ms. McBride told Dr. Johnston that she experienced a "burning throbbing tingling ache" in her lower back that radiated from her waist to her tailbone and that her pain worsened during periods of prolonged sitting, standing, laying, or walking.  Dr. Johnston documented Ms. McBride's work history as a registered nurse for twenty-two years before retiring and before that as a cosmetologist for seventeen years.  He observed that Ms. McBride had mild difficulty laying on and getting up off the examination table but had no difficulty in walking or

---

[1] Permanent partial disability "means the economic loss to an injured employee, measured as provided under W.S. 27-14-405(j), resulting from a permanent physical impairment[.]"  Wyo. Stat. Ann. § 27-14-102(a)(xv) (LexisNexis 2021).

[2] Ms. McBride sustained a previous work-related injury to her neck in 2013.

sitting. He determined she had low back pain without evidence of radiculopathy or myelopathy. He concluded that Ms. McBride suffered a two percent whole person impairment and that she had reached maximum medical improvement. Dr. Johnston recommended work restrictions of not lifting more than twenty pounds and changing positions every five to ten minutes.

[¶5]    On June 11, 2018, Dr. Spencer Greendyke performed a second evaluation. Ms. McBride reported lumbar spine discomfort when at rest and increasing pain with activity. She also reported bilateral posterior hip pain when at rest and increasing pain with activity. Dr. Greendyke noted no outward signs of pain. He documented that Ms. McBride had no difficulty standing, walking, squatting, or touching her toes despite tenderness in the muscles around the cervical spine and lumbar spine. He concluded that Ms. McBride suffered a four percent whole person impairment[3] and recommended work restrictions of not "lifting more than 20 pounds with both arms, and no bending or stooping."

[¶6]    Ms. McBride's back pain continued to worsen, and she was unresponsive to conservative treatment. In March 2019, she had a L4-5 discectomy and fusion on her lower back. Six months after her surgery, Dr. Greendyke performed a third independent medical evaluation. He concluded that Ms. McBride had reached maximum medical improvement following her latest surgery and increased her impairment rating to twelve percent. His previous work restrictions and movement recommendations remained unchanged. Based on Dr. Greendyke's impairment rating, the Division awarded Ms. McBride a permanent partial impairment benefit at twelve percent.

[¶7]    In April 2020, Ms. McBride submitted her PPD application. The application reflected that she had "[r]etired in 2016 because of injuries," she was not employed, she had not registered with job service or any other employment agency, and she was "not seeking employment." It listed only five job searches. These were performed between April 1 and April 9, 2020. The Division denied Ms. McBride's application based on her failure to comply with Wyo. Stat. Ann. § 27-14-405(h)(iii) conditioning an employee's eligibility for PPD benefits on "actively [seeking] suitable work, considering the employee's health, education, training and experience," and the Division rules defining "actively seeking work" as a minimum of five job contacts per week over the course of a six-week period immediately preceding the date the application is filed. Wyo. Workers' Comp. Div. Rules, Regulations & Fee Schedules, ch. 1, § 4(c) (June 2011), *superseded by* Wyo. Workers' Comp. Div. Rules, Regulations & Fee Schedules, ch. 1, § 3(c) (Oct. 2020); Wyo. Stat. Ann. § 27-14-405(h). Ms. McBride objected to the determination and a contested case hearing was held.

---

[3] Dr. Greendyke also assigned a four percent whole body impairment resulting from a work injury Ms. McBride's suffered in 2013.

[¶8]   The independent medical examinations of Dr. Johnston and Dr. Greendyke were submitted into evidence.  Additional evidence included medical records showing that throughout 2020 Ms. McBride had sought treatment for chronic back and neck pain.  These records included appointments with Jason Otto, PA-C, Ian Hunter, MD, McKenzi Turner, RN, and Riley Paris, PA-C.  The records reflect that Ms. McBride complained to Ms. Turner, Dr. Hunter, and PA Paris of worsening gait and balance issues.  PA Paris had talked with a neurosurgeon who had reviewed Ms. McBride's CT images.  PA Paris informed Ms. McBride that the neurosurgeon did not attribute her pain symptoms to her lumbar spine fusion.

[¶9]   Dr. Hunter testified by deposition.  He asserted that Ms. McBride was "no longer able to continue working as a registered nurse."  Dr. Hunter explained that working as a nurse is "much more physical than you would think.  A lot of the day is spent actively moving around the office.  We all get more than 5,000 steps during our day."  In his opinion, "[r]epetitively doing these kind of things [lifting, bending, stooping]" would "flare her back pain and lead to more problems."  Dr. Hunter clarified that his opinion was not based on Ms. McBride's "medical records[,] her physical limitations[,] her abilities based upon her training and experience and education, [or] whether she could work again in a lighter field."  His opinion was, instead, based on his observations during her recent office visit.  Dr. Hunter agreed with the work restrictions recommended by Dr. Greendyke.  He went on to say that Ms. McBride "could potentially find some . . . office job or something else that maybe wasn't as specifically demanding."  He cautioned that even in an office job, "she would need [to] be able to get up and cruise around, because . . . prolonged sitting causes problems as well."

[¶10]  Nonmedical evidence introduced at Ms. McBride's contested case hearing included a report from Investigative Resources of Wyoming, LLC; a vocational evaluation prepared by vocational assessor Kari Cornella; and testimony from Ms. McBride.  The Investigative Resources of Wyoming report described Ms. McBride walking her dog, getting into or out of her car, and shopping.  The report stated that she exhibited no visible signs of pain or physical limitations while engaged in these activities.

[¶11]  Ms. Cornella's evaluation included her assessment that, while Ms. McBride would need accommodations for her physical limitations, she was qualified to work as a consultant, supervisor, or case manager.  Ms. Cornella identified several available jobs.  Her report stated that Ms. McBride told her she could no longer work, she was not willing to relocate to find employment, and she did not like working with "management."

[¶12]  Ms. McBride testified that she had made only five job contacts and, aside from those contacts, she did not "really [go] in and appl[y] anywhere."  She explained she had increased susceptibility to COVID-19, and this affected the availability of jobs.  Additionally, she believed no employer would hire her because of her work restrictions.  She asserted that she could not work as a nurse because there was "always a time when

you have to do patient lifting: bending, stooping, twisting, all of that. It's a very hard, strenuous, physical job." She testified instead of looking for work, she was "more trying to recover from surgery and be physically able to pursue anything in the future."

[¶13] The OAH reversed the Division and awarded Ms. McBride PPD benefits. It found that Ms. McBride had made a tangible effort to find work considering her health, education, training, and experience. The Division appealed to the district court, and the district court reversed the OAH. It found that Ms. McBride did not present sufficient evidence that she actively sought work and did not present expert medical testimony showing she was incapable of working. Ms. McBride appeals.

### STANDARD OF REVIEW

[¶14] "We review an administrative appeal as if it came directly from the administrative agency, giving no deference to the district court's ruling on the appeal." *Reichenberg v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 36, ¶ 27, 506 P.3d 732, 741 (Wyo. 2022) (citing *Boyce v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 99, ¶ 21, 402 P.3d 393, 399–400 (Wyo. 2017); *Price v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017)). Our review of the agency's decision is governed by Wyo. Stat. Ann. § 16-3-114(c):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> .   .   .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> .   .   .
>
> [or]

4

(E)	Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii)(A), (E) (LexisNexis 2021).

[¶15] "A workers' compensation claimant must prove all essential elements of her claim by a preponderance of the evidence." *Boylen v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 39, ¶ 8, 506 P.3d 765, 769 (Wyo. 2022) (citing *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 9, 503 P.3d 23, 28 (Wyo. 2022)). "When both parties submit evidence, this Court will apply the **substantial evidence** test to fact findings." *Reichenberg*, ¶ 28, 506 P.3d at 741 (quoting *Ross*, ¶ 9, 503 P.3d at 28). Under the substantial evidence test,

> we examine the entire record to determine whether there is substantial evidence to support an agency's [factual] findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Matter of Worker's Comp. Claim of Vinson*, 2020 WY 126, ¶ 26, 473 P.3d 299, 308 (Wyo. 2020) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 558 (Wyo. 2008)). Further,

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

*Ross*, ¶ 9, 503 P.3d at 28 (quoting *Watkins v. State ex. rel. Wyoming Med. Comm'n*, 2011 WY 49, ¶ 16, 250 P.3d 1082, 1086 (Wyo. 2011)).

[¶16] "Even if an agency record contains sufficient evidence to support the administrative decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a 'safety net' to catch other agency action that may have violated the Wyoming Administrative Procedures Act." *Reichenberg*, ¶ 29, 506 P.3d at 742 (quoting *Mirich v. State ex. rel. Bd. of Trs. of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 16, 481 P.3d 627,

633 n.4 (Wyo. 2021)).  This standard applies when "the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Triplett v. State ex. rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2021 WY 118, ¶ 35, 497 P.3d 903, 911 (Wyo. 2021) (quoting *McIntosh v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 31, 311 P.3d 608, 616 (Wyo. 2013)).  It does not "apply to true evidentiary questions." *Id.* (quoting *McIntosh*, ¶ 31, 311 P.3d at 616).

> The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it.  The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Reichenberg*, ¶ 29, 506 P.3d at 742 (quoting *Vinson*, ¶ 27, 473 P.3d at 309).  "Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it." *Boylen*, ¶ 8, 506 P.3d at 769 (quoting *Matter of Claim of Hood*, 2016 WY 104, ¶ 14, 382 P.3d 772, 776 (Wyo. 2016)).

[¶17] "[W]e review an agency's conclusions of law de novo and affirm only if its conclusions are in accordance with the law." *Ross*, ¶ 11, 503 P.3d at 29 (quoting *Triplett*, ¶ 35, 497 P.3d at 911).

## *DISCUSSION*

[¶18] OAH awarded Ms. McBride PPD benefits, finding that she had met the three conditions in Wyo. Stat. Ann. § 27-14-405(h).  Wyo. Stat. Ann. § 27-14-405(h) provides:

> (h)    An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:
>
> > (i)    The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;
> >
> > (ii)    An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last

6

scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

(iii) **The employee has actively sought suitable work, considering the employee's health, education, training and experience.**

Wyo. Stat. Ann. § 27-14-405(h) (LexisNexis 2021) (emphasis added).

[¶19]   At the time of Ms. McBride's injury, the Division rules included the following definition of the term, "actively seeking work":

> For purposes of benefit eligibility, a claimant is actively seeking work if the claimant provides tangible evidence of the work search to the Division.  Completion of the work search form will be considered tangible evidence.  **The work search must contain a minimum of five contacts per week over the course of a six week period.**  The six week period must be immediately <u>preceding</u> the date the application is filed with the Division <u>or</u> immediately <u>following</u> the date the application is filed with the Division.  The contacts listed on the work search must be made for work the claimant is reasonably qualified to perform and is willing to accept.  Actions that would be considered an active search for employment include completing job applications, faxing or mailing resumes (include proof), or visiting the employers in person.  Claimant must contact the employer he was working for at the time of injury to inquire if the employer has work available within their medically documented restrictions.

Wyo. Workers' Comp. Div. Rules, Regulations & Fee Schedules, ch. 1, § 4(c) (June 2011) (emphasis added), *superseded by* Wyo. Workers' Comp. Div. Rules, Regulations & Fee Schedules, ch. 1, § 3(c) (Oct. 2020).[4]

---

[4] The citation is to the rules in effect from June 2011 to August 2017 as the hearing examiner must determine the case "in accordance with the law in effect at the time of the injury . . ." and Ms. McBride's injury occurred in 2015.  Wyo. Stat. Ann. § 27-14-602(b) (LexisNexis 2021).  We note however, that Wyo. Workers' Comp. Div. Rules, Regulations & Fee Schedules, ch. 1, § 4(c) (June 2011), while superseded, was not changed in the 2020 revisions.  *Compare* Wyo. Workers' Comp. Div. Rules, Regulations & Fee Schedules, ch. 1, § 3(c) (Oct. 2020), *with* Wyo. Workers' Comp. Div. Rules, Regulations & Fee Schedules, ch. 1, § 4(c) (June 2011).

[¶20]   The parties do not dispute that Ms. McBride met the first two statutory requirements for PPD—she was unable to return to a job paying at least ninety-five percent of her gross monthly earnings at the time of her injury, and she timely filed her PPD benefits application.  The controversy centers on the third statutory condition requiring an employee to actively seek suitable work, considering the employee's health, education, training, and experience.  Wyo. Stat. Ann. § 27-14-405(h)(iii).  Ms. McBride concedes that she failed to comply with the Division's rule defining actively seeking work as a "minimum of five contacts per week over the course of a six week period" immediately before or after the application is filed.  Wyo. Workers' Comp. Div. Rule, ch. 1, § 4(c) (June 2011).  But she argues that she met the third requirement when the rule in *In re Worker's Comp. Claim of Johnson*, 2001 WY 48, 23 P.3d 32 (Wyo. 2001) is applied to her case.[5]

[¶21]   In *Johnson*, a co-worker accidentally dropped a four-pound hammer on Mr. Johnson's head while Mr. Johnson was standing on a ladder.  *Johnson*, ¶ 3, 23 P.3d at 34.  The blow caused him to fall fourteen feet to the concrete floor injuring "his head, neck, and lower back."  *Id.*  He applied for PPD benefits, and the Division denied his application.  *Id.* ¶ 6, 23 P.3d at 35.  He appealed and the OAH affirmed the denial concluding that Mr. Johnson had failed to establish that he actively sought suitable work.  *Id.*

[¶22]   On appeal, "[t]he only issue for resolution was whether Mr. Johnson had proven by a preponderance of the evidence that he actively sought suitable employment, considering his health, education, training, and experience."  *Id.* ¶ 9, 23 P.3d at 36.  Mr. Johnson testified about his severe physical limitations and admitted that he did not seek work.  *Id.* ¶¶ 10, 12, 23 P.3d at 36–37.  However, he asserted his physician "advised him any type of work would aggravate his already severely debilitated condition."  *Id.* ¶ 12, 23 P.3d at 37.  Mr. Johnson's treating physician submitted a letter which said:

> I cannot see where placing Mr. Johnson at any regular job will help his back pain picture nor is it likely to remain static.  It will undoubtedly get worse with enforced sitting, standing or any prescribed activity such as a job might indicate at this point.

*Id.* ¶ 10, 23 P.3d at 36.  We considered whether Mr. Johnson had complied with the statutory requirement that he actively seek suitable work *considering his health*.  *See id.* ¶ 12, 23 P.3d at 37.  We reasoned:

> The circumstances of this case raise a peculiar quandary.  Mr. Johnson is evidently in a very diminished

---

[5] The Division argues that any reliance on *Johnson* is misplaced because *Johnson* predated the Division's rule requiring a minimum number of work searches.  We do not reach this argument because we find that *Johnson* is distinguishable.

physical state. **His doctor has advised him against work of any kind, and from his testimony, which is consistent with this medical opinion, it appears he has not been released to work.** On the other hand, § 27-14-405(h)(iii) seems to require evidence of an active job search. However, at the same time, Wyo. Stat. Ann. § 27-14-407 (LEXIS 1999) precludes a claimant from engaging in activities which imperil or retard recovery. "[W]orkers' compensation benefits will not be awarded for the subsequent injury caused by the worker's willful disregard for his physical limitations and his doctor's orders." *Fenner v. Trimac Transportation, Inc.*, 554 N.W.2d 485, 490 (S.D. 1996) (*State ex. rel. Wyoming Workers' Safety and Compensation Division v. Henriksen*, 2001 WY 42, 21 P.3d 1185 [(Wyo. 2001)], presents an analogous factual circumstance in the context of a claimant's application for temporary total disability benefits). This potential dilemma is resolved by the language of § 27-14-405(h)(iii) which qualifies the requirement the employee "actively sought suitable work" with the language "considering the employee's health."

*Johnson*, ¶ 13, 23 P.3d at 37 (emphasis added) (footnote omitted). We concluded that Mr. Johnson had met the work search requirement even though he had not applied for any work because he had shown that his health condition precluded a job search of any kind. *Id.* The burden then shifted to the Division for it to prove that "Mr. Johnson did not actively pursue employment considering his health." *Id.* ¶ 14, 23 P.3d at 37. The only evidence the Division submitted was an independent medical examiner's statement:

> In light of his injury and physical impairments, I do not feel that Mr. Johnson will be able to return to his prior line of work which was a heavy duty job description. Mr. Johnson would do best should he desire to return to the work force to receive job retraining at the sedentary level. Mr. Johnson reports difficulty sitting, standing or walking for prolonged periods of time and I feel that it would be in his best interest to perform all activities on an as tolerated basis only. I would limit his sitting to no more than 1 hour at a time with positional changes and rest breaks as needed.

*Id.* We found that the independent medical examiner's opinion supported that of Mr. Johnson's physician—"return to the 'regular' workforce would be detrimental to his health." *Id.* ¶ 14, 23 P.3d at 38. We further found that the Division did not provide any evidence establishing Mr. Johnson's vocational capacity or identifying jobs he could perform that would not worsen his physical state. *Id.* ¶ 15, 23 P.3d at 38. We held that the

9

OAH could not have reasonably found that Mr. Johnson had failed to establish that he actively sought suitable work when the evidence before it conclusively established there was no suitable work for him to seek. *Id.* ¶¶ 15–16, 23 P.3d at 38.

[¶23]  Ms. McBride argues that, like Mr. Johnson, she has satisfied the requirement she "actively sought suitable work, considering [her] health, education, training and experience," because there is no suitable work considering her health.  Ms. McBride had the burden of proving eligibility for PPD benefits by a preponderance of the evidence. *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 24, 448 P.3d 834, 843 (Wyo. 2019) (citing *Bonsell v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2006 WY 114, ¶ 10, 142 P.3d 686, 689 (Wyo. 2006)).  Accordingly, to prevail before the OAH, Ms. McBride had to establish by a preponderance of the evidence that there was no suitable work available considering her health.

[¶24]  While Dr. Hunter opined that Ms. McBride could not return to work as a nurse because demands of such a job "would flare her back pain and lead to more problems," he offered that she "could potentially find some . . . office job or something else that maybe wasn't as specifically demanding."  While he cautioned that it might be difficult for her to get hired given her age and lack of experience, it was his opinion that there were jobs that she could perform despite her limitations.

[¶25]  Ms. McBride's three independent medical evaluations corroborate Dr. Hunter's testimony.  The first evaluation conducted by Dr. Johnston recommended work restrictions of not lifting more than twenty pounds and that Ms. McBride should be allowed to change positions every five to ten minutes.  The second and third evaluations performed by Dr. Greendyke recommended work restrictions of not "lifting more than twenty pounds with both arms, and no bending or stooping."  While each evaluation contains recommended work restrictions, none of them suggest that Ms. McBride cannot work without aggravating her condition.

[¶26]  The present case is distinguishable from *Johnson*.  Ms. McBride's injuries are not as debilitating as those of Mr. Johnson.  Ms. McBride can get in and out of her car, drive, and walk her dog on a leash.  Dr. Hunter testified that Ms. McBride could get out of her chair, walk around, and get on the examination table.  In contrast, Mr. Johnson had developed a seizure disorder, experienced constant headaches, was unable to use his right arm, was confined to a wheelchair, and could only walk ten to fifteen feet unassisted. *Johnson*, ¶ 5, 23 P.3d at 34–35.  His physician said that in "his medical opinion . . . any level of 'regular' work activity would make Mr. Johnson's already extraordinarily limited physical capacity and condition worse." *Id.* ¶ 11, 23 P.3d at 36.  We held that Mr. Johnson had met the requirement of actively seeking suitable work because under the unique circumstances of his case, there was no work that would not detrimentally impact his health. *Id.* ¶ 13, 23 P.3d at 37.  Here, no medical provider opined that Ms. McBride was unable to work without diminishing her physical state or causing additional injury.  Ms.

McBride did not testify that she could not work. Instead, she conceded that she was not looking for work. Ms. McBride did not establish by a preponderance of the evidence that there was no suitable work given her health. We reverse the OAH decision as it is not supported by substantial evidence. We affirm the decision of the district court.