# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 15

## OCTOBER TERM, A.D. 2023

February 1, 2024

BJAY NAGEL,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-23-0147

*Appeal from the District Court of Crook County*
The Honorable James Michael Causey, Judge

*Representing Appellant:*
Brooke M. Barney, Barney & Graham, LLC, Sheridan, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Bjay Nagel broke his left ankle while working for Sand Creek Country Club (Club) near Beulah, Wyoming.  The Wyoming Department of Workforce Services, Workers' Compensation Division (Division) initially awarded benefits but later denied further benefits upon discovering Mr. Nagel was intoxicated at the time of his injury.  After a contested case hearing, the Wyoming Office of Administrative Hearings (OAH) upheld the Division's denial of benefits because Mr. Nagel's intoxication was a substantial factor causing his injury.  Mr. Nagel filed a petition for review with the district court, which affirmed the OAH's decision.  We too affirm.

## ISSUE

[¶2]   Mr. Nagel raises one issue for our review, which we restate as follows:

> Was the OAH's decision that Mr. Nagel's intoxication was a substantial factor causing his injury contrary to substantial evidence, arbitrary, capricious, or otherwise not in accordance with the law?

## FACTS

[¶3]   Mr. Nagel was employed as a caretaker by the Club.  He and his family lived in the caretaker's cabin on the Club's property and were permitted to fish and tube the creek on the property.  Mr. Nagel's duties as caretaker included "mak[ing] rounds of the Club grounds at least twice a day" and "[r]emov[ing] any trees which f[e]ll into the creek."  Mr. Nagel was expected to "be on site daily" unless he notified the Club's President or a member of its Board of Directors that he would be away from the property.

[¶4]   On June 13, 2021, after performing his rounds of the Club's property, Mr. Nagel and his wife went to the local trading post for brunch.  While there, he consumed alcohol and met two individuals who were painting a Club member's cabin.  Mr. Nagel agreed to take the painters tubing on the creek.  He and one of the painters left the trading post and went to Mr. Nagel's cabin, where they loaded tubes onto Mr. Nagel's side-by-side all-terrain vehicle (ATV).  After delivering the tubes up the creek, he and the painter drove the ATV back to the cabin to pick up Mr. Nagel's wife and the other painter.  En route, Mr. Nagel's dog, who had followed him to the creek, suddenly darted in front of the ATV.  Mr. Nagel swerved to avoid hitting the dog and rolled the ATV onto its side.  Mr. Nagel's left foot got caught underneath the ATV's tire, fracturing his left ankle.  His passenger was not injured.

[¶5]   At 4:49 p.m., the Crook County Medical Services District dispatched an ambulance to the scene of the accident.  The paramedic observed Mr. Nagel had an "open fracture

1

with bone sticking out." He noted there was no alcohol on Mr. Nagel's breath and Mr. Nagel's neurological examination and speech were normal. Mr. Nagel told the paramedic:

> [H]e was going about 25 mph when his dog ended up following them from home, dog ran out in front of ATV causing him to roll over, vehicle landed on his chest, his father in law lifted it off, he doesn't know what part of his chest where it landed, denies [shortness of breath] or [chest pain], the only pain he has is 10/10 in the [left] foot, he admits to 3 beers and 2 shots about 2 hours prior, adamantly and repeatedly denies other pain elsewhere. [D]enies hitting his head or having [loss of consciousness].

[¶6] The ambulance transported Mr. Nagel to the Emergency Department (ED) at Monument Health Hospital in Spearfish, South Dakota. Mr. Nagel told the examining doctor that a "dog ran in front [of the ATV,] he skidded and fell out[.]" He also "admit[ted] to drinking some alcohol." The doctor diagnosed Mr. Nagel with "a very severe comminuted open fracture dislocation of the ankle" which needed emergency treatment at a trauma center. He cleaned and applied a splint to Mr. Nagel's ankle and ordered a blood draw for laboratory testing, which was taken at 7:00 p.m. that evening. Mr. Nagel was then transported by ambulance to the Monument Health Hospital in Rapid City, South Dakota, for surgery. The testing of Mr. Nagel's blood revealed a Blood Alcohol Content (BAC) of .183%.

[¶7] Mr. Nagel applied for workers' compensation benefits. The Club objected to Mr. Nagel's claim because, according to it, he was not acting in his role as a caretaker at the time of his injury but instead was engaged in a leisure activity with his wife and friends. The Division disagreed because Mr. Nagel was required to be on the job "24/7" unless he notified the Club's President or a Board member that he would be gone. It concluded Mr. Nagel's injury was compensable and paid him $1,483.50 for his medical expenses and $5,200.26 in temporary total disability benefits.

[¶8] A few months later, the Division received Mr. Nagel's medical records and discovered he had a .183% BAC at the ED on the date of his injury. It denied Mr. Nagel any future benefits because the definition of "injury" in the Wyoming Workers' Compensation Act "does not include injury caused by the fact the employee is intoxicated or injury due solely to the culpable negligence of the injured employee." Wyo. Stat. Ann. § 27-14-102(a)(xi)(B)(I), (C) (2023). Mr. Nagel timely objected and requested a hearing. The Division referred Mr. Nagel's claim to the OAH, which held a contested case hearing.

[¶9] The OAH found Mr. Nagel's injury arose out of and in the course and scope of his employment and the Division had failed to meet its burden of showing that Mr. Nagel's injury was not compensable because it was caused solely by his culpable negligence.

2

However, it affirmed the denial of benefits under § 27-14-102(a)(xi)(B)(I), which excludes workers' compensation coverage for injuries caused by the employee's intoxication. It decided the Division had shown by a preponderance of the evidence that Mr. Nagel's intoxication was a substantial factor causing his injury. Mr. Nagel petitioned the district court for judicial review. After the district court affirmed the OAH's denial of benefits, Mr. Nagel timely appealed to this Court.

**STANDARD OF REVIEW**

[¶10] "When an appeal is taken from a district court's review of an administrative agency's decision, we examine the case as if it came directly from the agency, giving no special deference to the district court's decision." *McCallister v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 66, ¶ 7, 510 P.3d 1051, 1054 (Wyo. 2022) (citing *In re Vinson*, 2020 WY 126, ¶ 25, 473 P.3d 299, 308 (Wyo. 2020), and *Guerrero v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2015 WY 88, ¶ 11, 352 P.3d 262, 265 (Wyo. 2015)) (other citation omitted). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (2023), which provides in relevant part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
> . . .
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]
> . . .
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Vinson*, ¶ 25, 473 P.3d at 308 (citation and internal quotation marks omitted).

[¶11] Whether an employee's injury was caused by his intoxication is a question of fact. *Johnson v. State ex rel. Wyo. Workers' Comp. Div.*, 911 P.2d 1054, 1058 (Wyo. 1996) (citations omitted). "In accordance with § 16-3-114(c)(ii)(E), we review [an] agency's findings of fact by applying the substantial evidence standard." *McCallister*, ¶ 8, 510 P.3d at 1054 (citing *Vinson*, ¶ 26, 473 P.3d at 308). "Findings of fact are supported by

substantial evidence if there is relevant evidence in the record which 'a reasonable mind might accept in support of the agency's conclusion.'" *Id*. (quoting *Dale v. S&S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 558 (Wyo. 2008)) (other citations omitted).

[¶12]  "'Even if an agency record contains sufficient evidence to support the administrative decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a "safety net" to catch other agency action that may have violated the Wyoming Administrative Procedures Act[.]'" *Vinson*, ¶ 27, 473 P.3d at 309 (quoting *Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 65, ¶ 19, 135 P.3d 568, 575 (Wyo. 2006), and citing *Dale*, ¶ 23, 188 P.3d at 561).

> "The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision."

*Id*. (quoting *Tayback v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2017 WY 114, ¶ 13, 402 P.3d 984, 988 (Wyo. 2017)).  "'Under the umbrella of arbitrary and capricious actions would fall potential mistakes such as inconsistent or incomplete findings of fact or any violation of due process.'" *Id*. (quoting *Rodgers*, ¶ 19, 135 P.3d at 575, and *Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, ¶ 24, 124 P.3d 686, 694 (Wyo. 2005)) (other citation omitted).

[¶13] "We review an agency's conclusions of law de novo and affirm only if its conclusions are in accordance with the law." *Triplett v. State ex. rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2021 WY 118, ¶ 35, 497 P.3d 903, 911 (Wyo. 2021) (citing § 16-3-114(c)(ii)(A)).

## DISCUSSION

[¶14]  "[A] claimant in a workers' compensation case has the burden to prove all the elements of [his] claim by a preponderance of the evidence." *Reichenberg v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 36, ¶ 31, 506 P.3d 732, 742 (Wyo. 2022) (citing *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 22, 247 P.3d 845, 851 (Wyo. 2011)).  A "'preponderance of the evidence' is 'proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence.'" *Kenyon*, ¶ 22, 247 P.3d at 851 (quoting *Judd v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 85, ¶ 31, 233 P.3d 956, 968 (Wyo. 2010), and *Anastos v. Gen. Chem. Soda Ash*, 2005 WY 122, ¶ 20, 120 P.3d 658, 665-66 (Wyo. 2005)).  The claimant's burden includes proving that he suffered an "injury" as defined by § 27-14-

4

102(a)(xi). *In re McCall-Presse*, 2011 WY 34, ¶ 7, 247 P.3d 505, 509 (Wyo. 2011). That statute defines "injury" in relevant part as:

> [A]ny harmful change in the human organism . . . arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Section 27-14-102(a)(xi).

[¶15] Once a claimant meets his burden of proving all the essential elements of his workers' compensation claim, "the burden shifts to the party opposing benefits to establish an exclusion from worker[s'] compensation coverage." *Shepherd of Valley Care Ctr. v. Fulmer*, 2012 WY 12, ¶ 20, 269 P.3d 432, 438 (Wyo. 2012). The exclusion at issue in this case is the "intoxication" exclusion.[1] Section 27-14-102(a)(xi)(B)(I) excludes from the definition of "injury" an "[i]njury caused by . . . [t]he fact the employee is intoxicated . . . . The division shall define 'intoxicated' . . . for purposes of this subparagraph in its rules and regulations[.]" The Division's rules and regulations define "intoxicated" as "a positive alcohol test result at or above .08 alcohol concentration level." Wyo. Workers' Comp. Div. Rules & Regulations, Ch. 1, § 3(cc). To establish the intoxication exclusion, the party opposing benefits must show "the employee's injury was caused by intoxication," that is, intoxication was "'a substantial factor in bringing about the injur[y][.]'" *Johnson*, 911 P.2d at 1061 (quoting *Allmaras v. Mudge*, 820 P.2d 533, 542 (Wyo. 1991), and *Buckley v. Bell*, 703 P.2d 1089, 1091-92 (Wyo. 1985)). Once the opposing party meets its burden by producing evidence of intoxication, the burden of producing evidence to the contrary shifts to the employee. *Id*. at 1062.

[¶16] The OAH determined the Division had shown by a preponderance of the evidence that Mr. Nagel was intoxicated at the time of his injury and his intoxication was a substantial factor causing his injury. Mr. Nagel argues this determination was not supported by substantial evidence and was arbitrary, capricious, and otherwise not in accordance with the law. We disagree. There was substantial evidence supporting the

---

[1] Section 27-14-102(a)(xi)(C) excludes from the definition of "injury" those injuries "due solely to the culpable negligence of the injured employee." As stated above, the OAH concluded the Division had not satisfied its burden of showing Mr. Nagel's injury was caused solely by his culpable negligence. Because we are affirming the OAH's decision that the intoxication exclusion applies, we need not consider whether Mr. Nagel's injury was caused by his culpable negligence. *Johnson*, 911 P.2d at 1062 ("Because we have sustained the hearing examiner's finding that [the decedent's death] was caused by his intoxication, we need not consider . . . whether [his] death was caused by his culpable negligence."). Moreover, the Division did not appeal the OAH's decision regarding culpable negligence.

OAH's decision, the decision was not arbitrary or capricious because there was a rational basis for it, and the decision was in accordance with the law.

[¶17]  Mr. Nagel admitted to the paramedic that he had three beers and two shots about two hours prior to the ATV accident and told the ED doctor that he had consumed some alcohol.  Laboratory testing of Mr. Nagel's blood at 7 p.m. on the day of his injury showed him to have a .183% BAC, well above the level the Division has defined as "intoxicated." Dr. Douglas C. Scott, the Division's retained expert, opined Mr. Nagel was intoxicated at the time of his injury given his .183% BAC at 7 p.m. on the same day.  He also stated that, with a known BAC of .183%, "Mr. Nagel's physical and mental abilities were impaired" and, as noted by the ED nurse, "his speech was slurred, consistent with this high BAC." Dr. Scott opined:  "Presuming that [Mr. Nagel's] BAC level was higher [than .183%] at the time of the [ATV] accident, . . . it is more likely than not, i.e. probable, that Mr. Nagel's alcohol consumption was a substantial causative factor in the . . . accident in this case."

[¶18]  Mr. Nagel argues the OAH erred by relying on Dr. Scott's opinions because the OAH found Dr. Scott's "estimate" that Mr. Nagel had a "possibl[e]" .250% BAC at the time of the ATV accident was not credible or persuasive.  The OAH discounted Dr. Scott's "estimate" of Mr. Nagel's "possibl[e]" BAC at the time of the accident because Dr. Scott noted the accident was reported at 4 p.m., but his estimate of Mr. Nagel's BAC at the time of the accident was based on the accident occurring at 2 p.m.  The OAH also determined "Dr. Scott's 'estimate' of a 'possible' BAC did not meet the reasonable medical probability standard and was not persuasive."  Since it decided Dr. Scott's "estimate" of Mr. Nagel's BAC at the time of the accident was not credible or persuasive, the OAH also did not consider Dr. Scott's opinion on the number of drinks Mr. Nagel would have had to consume to reach his "estimated" .250% BAC ("8 bottles of beer and 4 shots of liquor") or his discussion of the symptoms Mr. Nagel likely experienced with a .250% BAC.  However, the OAH found Dr. Scott's opinions that Mr. Nagel was intoxicated at the time of his injury and his intoxication was a substantial factor causing his injury were credible as they were based on Mr. Nagel's blood test, which revealed he was "intoxicated" under the Division's definition when he was transported to the hospital after the accident.

[¶19]  "We defer to an agency's credibility determinations if they are based on a rational premise.  If the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility . . . its decision will be sustainable under the substantial evidence test."  *Rodriguez v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 166, ¶ 28, 522 P.3d 164, 171 (Wyo. 2022) (internal citations and quotations marks omitted).  *See also, Taylor v. State, ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 16, 123 P.3d 143, 148 (Wyo. 2005) ("'The task of determining the credibility of the witnesses and weighing the evidence is assigned to the [OAH], and its determination will be overturned only if it is clearly contrary to the great weight of the evidence.'" (quoting *Hurley v. PDQ Transp., Inc.*, 6 P.3d 134, 138 (Wyo. 2000))).

> We have consistently held that the question of credibility of witnesses rests with the trier of fact, *Montez v. State, Wyo.*, 527 P.2d 1330, 1332 (1974); *Janski v. State, Wyo.*, 538 P.2d 271, 277 (1975), and this determination will not be disturbed on appeal. *Brown v. State*, Wyo., 581 P.2d 189, 191 (1978). There is no rule of law that we are aware of that says that a fact finder must believe or disbelieve anyone. *In fact, the trier of fact is free to accept all, part or none of the evidence offered by a witness. Hopkinson v. State, . . .* 632 P.2d 79, 148 ([Wyo.] 1981), *cert. denied* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Clegg v. State, . . .* 655 P.2d 1240, 1242 ([Wyo.] 1982).

*Simmons v. State*, 687 P.2d 255, 258 (Wyo. 1984) (emphasis added).

[¶20]   The OAH, as the trier of fact, was free to accept Dr. Scott's opinions that Mr. Nagel was intoxicated at the time of his injury and his intoxication was a substantial factor causing his injury while rejecting Dr. Scott's opinions concerning Mr. Nagel's estimated BAC at the time of the injury and the number of drinks he likely consumed.  It also had a rational basis for doing so.  The former opinions were based on Mr. Nagel's known BAC while the latter were based on a timing error.

[¶21]   Mr. Nagel also maintains the OAH erred by relying on Dr. Scott's opinions because Dr. Scott was not provided with all of the relevant medical records when conducting his review and forming his opinions.  In his report, Dr. Scott recommended that the Division obtain for his review and comment the records of the paramedic who responded to the accident scene "[t]o ascertain Mr. Nagel's mental state and[/]or evidence of intoxication at the scene[.]"  There is nothing in the record demonstrating the Division took Dr. Scott's recommendation.  According to Mr. Nagel, Dr. Scott's opinions likely would have been different had he reviewed the paramedic's report, which stated no alcohol was noted on Mr. Nagel's breath and Mr. Nagel's neurological examination and speech were normal. Mr. Nagel maintains the OAH wrongfully disregarded the paramedic's report based on its speculation that "[i]t is doubtful that [Mr.] Nagel did not exhibit some smell of alcohol when the ambulance arrived.  More likely, [the paramedic] focused on treating [Mr.] Nagel's severely injured left foot and ankle and simply did not notice the smell."

[¶22]   The OAH recognized the inconsistencies between (1) the paramedic's observations that Mr. Nagel did not have alcohol on his breath and his speech was normal and (2) his .183% BAC and the ED nurse's report stating Mr. Nagel's speech was slurred.  However, it was within the OAH's province to resolve the conflicting evidence. *In re Baldwin*, 2008 WY 125, ¶ 18, 196 P.3d 1087, 1093 (Wyo. 2008) ("As the finder of fact, it is the [OAH's] duty to weigh the evidence and resolve . . . conflicts [in the evidence]." (citing *Kuntz-Dexter v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 101, ¶ 12, 49 P.3d

190, 193 (Wyo. 2002))). While the OAH sought to explain the paramedic's failure to notice alcohol on Mr. Nagel's breath, it concluded that "*[r]egardless [of the reasons why], the .183% BAC test result sufficiently supports Dr. Scott's opinion that [Mr.] Nagel's intoxication was a substantial causative factor in the ATV crash.*" (Emphasis added). Mr. Nagel's .183% BAC, alone, supported the OAH's determination that Mr. Nagel was intoxicated at the time of his injury. In *Coleman v. State ex rel. Wyo. Workers' Comp. Div.*, 915 P.2d 595, 597-99 (Wyo. 1996), we determined the decedent's intoxication at the time of his fatal accident was established by substantial evidence based solely on the blood sample taken by the county coroner later that day which revealed a .11% BAC. In *Johnson*, 911 P.2d at 1059, 1061, we determined there was substantial evidence that the decedent was intoxicated at the time of his death based on his .23% BAC and the fact that he "left Gillette with a case of beer and a fifth of schnapps [and] [n]ine cans of beer and one-third of a 'fifth' sized bottle of schnapps were unaccounted for after the [car] accident." Here, the record shows Mr. Nagel had a .183% BAC approximately three hours after his injury, and he admitted to drinking alcohol at brunch before his injury.

[¶23] Because the Division showed by a preponderance of the evidence that Mr. Nagel was intoxicated at the time of his injury, the burden shifted to Mr. Nagel to produce evidence to the contrary. *Id.* at 1062. As the OAH found, Mr. Nagel provided no evidence showing he was not intoxicated at the time of his injury or otherwise calling into question the .183% BAC test results. Rather, Mr. Nagel maintains the Division did not meet its burden of showing he was intoxicated at the time of his injury because there was no conclusive evidence in the record establishing when his injury occurred or how many drinks he consumed.

[¶24] There was conflicting evidence about the exact time of the injury and the number of drinks Mr. Nagel consumed. However, that information was irrelevant to the OAH's determination that Mr. Nagel was intoxicated at the time of his injury. Indeed, the OAH stated it would not speculate regarding the number of drinks Mr. Nagel would have had to consume for him to have a .183% BAC. Rather, the OAH found Mr. Nagel was intoxicated at the time of his injury based on the laboratory testing of his blood, which showed he had at least a .183% BAC at the time of his injury. As discussed above, under our precedent that is enough to establish Mr. Nagel was intoxicated at the time of his injury.

[¶25] Mr. Nagel argues the evidence did not support the OAH's determination that his intoxication was a substantial factor causing his injury. He points to his testimony that he was not "extremely intoxicated" while driving the ATV and he had "no difficulties driving whatsoever." He also maintains the evidence showed that the "proximate intervening cause" of his injury was his dog running in front of the ATV. According to him, had he not swerved to avoid hitting his dog, he would not have flipped the ATV and sustained his injury.

[¶26] It was reasonable for the OAH to rely on Mr. Nagel's objective BAC rather than his subjective evaluation of his level of intoxication and driving abilities. *Coleman,* 915 P.2d at 597-99; *Johnson,* 911 P.2d at 1059, 1061. With respect to Mr. Nagel's dog causing his injury, the OAH concluded the dog running in front of the ATV and Mr. Nagel's intoxication were substantial factors which combined to cause Mr. Nagel's injury. However, it decided that under our precedent, intoxication need only be *a* cause of the injury, not *the* cause. The OAH was correct. In *Coleman,* 915 P.2d at 597, the decedent was driving a tractor-trailer at work even though he did not have a commercial driver's license. He approached a curve in the road too fast, causing the tractor-trailer to tip onto its top. *Id.* The decedent was pinned in the truck's cab and died. *Id.* The coroner took a blood sample from the decedent which demonstrated a BAC of .11%. *Id..* The decedent's wife and children applied for death benefits which the Division denied because the decedent's intoxication at the time of the accident caused his death. *Id.* at 597-98. On appeal, the decedent's wife and children argued the Division had not met its burden of showing that intoxication was the cause of the decedent's death because the evidence showed the accident was caused by the decedent's lack of experience driving a tractor-trailer and his failure to downshift prior to starting down a hill. *Id.* at 599. We concluded it was sufficient if intoxication was "*a* cause" of death: "Regardless of how many other 'substantial factor[s]' apparently combine to bring about the injuries identified, [the decedent's] intoxication was established by substantial evidence as a cause of death, bringing Wyo. Stat. § 27-14-102(a)(xi)(B)(I) to bear, excluding recovery." *Id.* (emphasis in original). In this case, there was substantial evidence that Mr. Nagel's intoxication was *a* cause of his injury. Mr. Nagel had a .183% BAC at 7 p.m. on the day of his injury, and Dr. Scott opined that with a known .183% BAC, it was more likely than not that Mr. Nagel's intoxication was a substantial factor causing his injury.

[¶27] Mr. Nagel argues his terms of employment did not restrict or prohibit him from drinking alcohol and the evidence showed that "drinking alcohol while 'on duty' was both facilitated and encouraged by [C]lub members and even the President of the Board." He also claims that because he was on call 24/7, it is not "inconceivable" that "he would be asked to perform his work-related duties while under the influence of alcohol." According to him, it would be "poor public policy [to allow] the Division . . . to invoke the intoxication affirmative defense when considering [his] unique employment circumstances which permitted him to consume alcohol during his work hours."

[¶28] The OAH found Mr. Nagel had shown by a preponderance of the evidence that he was on duty at all times when he was on the Club's property, the Club's President and Board of Directors knew he consumed alcohol while on duty, they provided him alcohol while on duty, and they at least acquiesced to his on-the-job drinking. It decided that because the Club acquiesced in and even facilitated Mr. Nagle's on-the-job consumption of alcohol, the Club could not claim that Mr. Nagle was not acting within the scope of his

duties at the time of his injury based on his intoxication.[2] However, the OAH also decided the fact that the Club acquiesced to his on-the-job consumption of alcohol was not enough to preclude the Division from asserting an intoxication defense to his workers' compensation claim.

[¶29] Mr. Nagel's argument is essentially that the Division was equitably estopped from relying on the intoxication exclusion because of his unique work circumstances. "[E]quitable estoppel generally does not apply against governmental entities." *Montana-Dakota Utils., Co. v. Wyo. Pub. Serv. Comm'n*, 2014 WY 106, ¶ 30, 332 P.3d 1160, 1168 (Wyo. 2014) (citing *Thompson v. Bd. of Cnty. Comm'rs*, 2001 WY 108, ¶ 12, 34 P.3d 278, 281–82 (Wyo. 2001)). However, in workers' compensation cases, we have recognized that equitable estoppel may apply to the Division if the claimant shows "'he relied, to his detriment, upon some *action of the Division.*'" *Sweetalla v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 91, ¶ 26, 448 P.3d 825, 832 (Wyo. 2019) (emphasis added) (quoting *Schwab v. JTL Grp., Inc.*, 2013 WY 138, ¶ 15, 312 P.3d 790, 795 (Wyo. 2013), and *Picozzi v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 86, ¶ 13, 304 P.3d 977, 981 (Wyo. 2013)). In this case, Mr. Nagel testified he was never told by the Club's President or its Board members that he could not drink alcohol and, in fact, the President and Board members often supplied him alcohol while he was on duty. However, he admitted he was not required to consume alcohol as part of his job and he could have said "no" when the President and Board members offered him alcohol. Nonetheless, for the Division to be subject to equitable estoppel, Mr. Nagel had to show he relied on some action <u>by the Division</u>. The fact that the Club's President and Board may have acquiesced in his on-the-job drinking does not estop the Division from invoking the intoxication exclusion.

## CONCLUSION

[¶30] The OAH's decision that Mr. Nagel's intoxication was a substantial factor causing his injury was supported by substantial evidence, was not arbitrary or capricious, and was otherwise in accordance with the law. We affirm.

---

[2] The Division does not contest the OAH's finding that Mr. Nagel proved by a preponderance of the evidence that his injury arose out of and in the course of his employment as a caretaker, so we do not consider it. Moreover, our decision that the intoxication exclusion applies renders it unnecessary to address this issue. *Johnson*, 911 P.2d at 1062 ("Because we have sustained the hearing examiner's finding that [the decedent's death] was caused by his intoxication, we need not consider . . . whether [his] death arose out of and in the course of his employment . . . .").