# THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 77

APRIL TERM, A.D. 2024

July 19, 2024

MING ZHENG,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' COMPENSATION
DIVISION,

Appellee
(Respondent).

S-23-0277

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*
    David McCarthy of David McCarthy, P.C., Rawlins, Wyoming.

*Representing Appellee:*
    Bridget L. Hill, Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Ming Zheng suffered a work-related injury to her right ankle which was covered by workers' compensation.  Approximately one year after her work-related injury, Ms. Zheng sought workers' compensation benefits for an injury to her left ankle and requested preauthorization for surgery on her right ankle.  The Wyoming Department of Workforce Services, Workers' Compensation Division (Division) found Ms. Zheng's requested benefits for her left ankle and the surgery to her right ankle were not reasonable and necessary medical care related to her compensable work-related injury.  The Division also discontinued Ms. Zheng's temporary total disability benefits after she received an impairment rating of 0%.  Following a contested case hearing, the Wyoming Medical Commission upheld the Division's denial and discontinuation of benefits.  The district court affirmed the Medical Commission's decision.  We also affirm.

## ISSUES

[¶2]    Ms. Zheng raises two issues on appeal, which we rephrase as follows:

> I.    Was the Medical Commission's decision that Ms. Zheng failed to meet her burden of showing the benefits requested for her left ankle were related to her compensable work-related injury supported by substantial evidence?
>
> II.   Did the Medical Commission act arbitrarily and capriciously when it admitted into evidence an addendum to Dr. Orth's independent medical evaluation?

## FACTS

[¶3]    Ming Zheng was hired at Halliburton Energy Services as a drilling field engineer in March 2019.  As a field engineer, Ms. Zheng managed and monitored tools for downhole drilling activity.  On May 26, 2019, Ms. Zheng was instructed to disassemble a tool string using a specialized pipe wrench called a parmelee wrench.  To disassemble the tool string, it was not uncommon for the field engineers to stomp on the handle of the parmelee wrench.  On this occasion, Ms. Zheng was unable to disassemble the tool string by stomping on the parmelee wrench with one foot.  Because Ms. Zheng was having trouble, her supervisor instructed her to jump on the parmelee wrench with both feet.  Ms. Zheng complied, but her body weight was insufficient to force the wrench handle downward, which caused her feet to flex backward.  Ms. Zheng's lead supervisor then tried to show her how to take apart the tool string.  He jumped on the parmelee wrench, which caused the tool string to bounce up from the holder and hit Ms. Zheng on the inner right ankle.

1

[¶4]    Ms. Zheng reported her injury to an on-call coordinator, and she was given a phone number for the nurses employed by Halliburton to address in-house injuries. Ms. Zheng called the nurses to report the extent of her injury, and they instructed her to go see a doctor. The on-call nurses documented that Ms. Zheng was injured "[w]hile at work on 05/26/2019 during training, removing the clamp and torch [sic] wrench for the tool string, using force to remove and untorque equipment, she sustained multiple injuries from the equipment hitting into her right ankle and straining her right ankle causing bruising and discomfort."

[¶5]    Roughly a week after her work-related injury, Ms. Zheng reported to urgent care. The medical record listed the reason for her visit as "worker's compensation." The physician's assistant at urgent care noted Ms. Zheng presented with right ankle pain. He ordered an x-ray of her right ankle and diagnosed Ms. Zheng with a "[s]prain of right ankle, unspecified ligament" and "[a]cute right ankle pain." The x-ray of her right ankle showed no acute fracture or dislocation, no destructive bone lesions, and unremarkable soft tissue. The physician's assistant referred Ms. Zheng to occupational medicine and placed her on work restrictions to include lifting no more than 25 pounds and no activities that cause pain.

[¶6]    The day after her initial visit to urgent care, Ms. Zheng reported her work-related injury to the Division. She mentioned her feet and ankles, but limited her report of injury to the right side. Ms. Zheng reported a "torque wrench hurt [her] feet bending area and one of [her] ankles" while the "tool string hit her other ankle." The Division issued a final determination of compensability and found Ms. Zheng had suffered a compensable injury for her right ankle and right foot injuries. The Division also approved temporary total disability benefits for Ms. Zheng.

[¶7]    Approximately 15 days following her work-related injury, Ms. Zheng saw a specialist in occupational medicine, Mark L. Harlow, M.D. Dr. Harlow's progress notes indicated Ms. Zheng "sustained a work-related injury to her right ankle[.]" He noted Ms. Zheng sustained her injury when "her right foot slipped" as "she was trying to get a valve to release." He also noted Ms. Zheng was "struck by the metal handle on 3 occasions around her ankle." Dr. Harlow diagnosed Ms. Zheng with "a moderate sprain of her right ankle as well as contusions of her right ankle" and recommended she "begin physical therapy three times per week for the next two weeks." He also placed Ms. Zheng on work restrictions "to include office work only with no prolonged standing, no prolonged walking, and no ladders."

[¶8]    Ms. Zheng saw Dr. Harlow for a follow-up appointment on her right ankle on July 8, 2019, 43 days after her work-related injury. At this appointment, Ms. Zheng reported for the first time that she had also "injured her left ankle" while "jumping on the torque wrench." Ms. Zheng told Dr. Harlow her left ankle injury "did not become apparent to her until after she began to see recovery in the right ankle during her participation in therapy." At this appointment, Dr. Harlow assessed Ms. Zheng with "[b]ilateral ankle contusions and

sprains as a result of her work-related accident." Dr. Harlow placed Ms. Zheng on work restrictions for four more weeks and ordered her to "[c]ontinue physical therapy for the right ankle and initiate physical therapy for the left ankle." Approximately one month later, Ms. Zheng reported she was still having discomfort with both of her ankles. Dr. Harlow recommended Ms. Zheng continue physical therapy for one more month, extended her work restrictions, and stated he did not believe she was a candidate to return to field work because she may potentially pose a danger to herself or others if she could not trust her ankles on uneven surfaces.

[¶9]   At a follow-up appointment on September 9, 2019, Dr. Harlow noted Ms. Zheng "ha[d] not responded favorably to physical therapy" and the June 2019 x-ray of her right ankle revealed no abnormalities. He requested an MRI to evaluate her right ankle because the right ankle "[w]as the one that received the direct blow from the wrench and the metal rod." Dr. Harlow reviewed the 2019 MRI report and imaging and found there were no abnormalities present in Ms. Zheng's right ankle, which was consistent with the June 2019 x-ray findings. In addition to ordering an MRI of the right ankle, Dr. Harlow also ordered an x-ray of Ms. Zheng's left ankle, as her left ankle had never been x-rayed. The x-ray of Ms. Zheng's left ankle indicated "[t]he bones [were] normal in alignment and density," and "[t]here [were] no fractures, erosions, or focal soft tissue abnormalities." Dr. Harlow's impression of Ms. Zheng's left ankle was "[n]o acute osseous abnormality." In November 2019, Dr. Harlow found Ms. Zheng had reached maximum medical improvement with regard to her work-related injury and certified he believed she could return to work with the restrictions of no ladders and minimizing exposure to uneven surfaces.

[¶10]  Because Ms. Zheng's primary treating physician released her to return to work and the Division had not received any ongoing certifications from her healthcare provider, the Division ceased temporary total disability benefits for Ms. Zheng on January 31, 2020. Ms. Zheng timely objected to the Division's decision to discontinue temporary total disability benefits. The Division requested Scott Orth, M.D., review Ms. Zheng's medical records and conduct an independent medical evaluation (IME) to provide an impairment rating. Upon review of Ms. Zheng's medical records, Dr. Orth gave Ms. Zheng a 0% impairment rating and found she should have been released back to full unrestricted duty at about eight weeks post-injury. The Division issued a final determination of a permanent partial impairment benefit on March 5, 2020, and informed Ms. Zheng of the 0% benefit "for [her] bilateral ankles." Ms. Zheng did not object to that rating.

[¶11]  Around this same time, Ms. Zheng moved to Houston, Texas, where she began searching for a new doctor to treat what she believed were ongoing symptoms from her work-related injury. Eventually, Ms. Zheng secured an appointment with Troy Son, D.O. on June 4, 2020. Ms. Zheng reported to Dr. Son she was having bilateral foot and ankle pain that was caused by "taking [a] tool string apart and jump[ing] on a tool" the year prior. Ms. Zheng told Dr. Son she sustained an injury to her left and right ankle. Dr. Son diagnosed Ms. Zheng with contusions and sprains on both ankles, and referred her to David

3

Bloome, M.D., a foot and ankle orthopedic specialist. Dr. Son also submitted a certification for temporary total disability benefits to the Division on behalf of Ms. Zheng. The Division issued a final determination regarding Dr. Son's certification and informed Ms. Zheng that she had received a permanent partial impairment rating of 0%, so temporary total disability benefits could not be reinstated unless she 1) returned to gainful employment; and 2) following that employment, she undergo additional surgery or had an increase in incapacity.

[¶12] Ms. Zheng met with Dr. Bloome on June 16, 2020. Dr. Bloome's notes from his first exam of Ms. Zheng indicate she gave him a different explanation of her injury than what she gave Dr. Son. Ms. Zheng explained to Dr. Bloome she had three separate injuries while trying to dismantle the tool string in May 2019. She explained initially she injured her ankles when the torque from the wrench pushed her back, and she fell with an extreme dorsiflexion type movement to both her ankle regions. She then stated she continued to work and injured her right ankle two more times when she was struck by a portion of the tool string and then a parmelee wrench. Without pre-approval from the Division, Dr. Bloome ordered an MRI for both of Ms. Zheng's ankles because he wanted to determine why she was still having pain a year after her initial injury and to possibly "get a little bit better of a diagnosis." Dr. Bloome also wanted to compare Ms. Zheng's 2019 MRI of her right ankle with a newer MRI of the right ankle to determine if there were any changes that might explain why Ms. Zheng was struggling in her recovery.

[¶13] After reviewing the new 2020 MRI of Ms. Zheng's right ankle, and because she was not responding to physical therapy, Dr. Bloome recommended surgery on Ms. Zheng's right ankle. Dr. Bloome found the 2020 MRI of Ms. Zheng's right ankle indicated "there could possibly be a tear" on one of the tendons on the inside of her right ankle, called the poster tibialis tendon, due to the amount of edema or fluid around the area. He also found the 2019 MRI showed edema or fluid around this same tendon, which indicated there was a possible tear in the area back in 2019. Regarding the 2020 MRI of the left ankle, Dr. Bloome determined the imaging of the left ankle was fairly unremarkable and showed no abnormalities. He determined that while Ms. Zheng had "vague complaints" of diffuse pain around the left foot and ankle with some intermittent swelling, her alignment was good, she had good range of motion, and her ligaments felt stable. Dr. Bloome concluded Ms. Zheng was at maximum medical improvement on her left foot and ankle.

[¶14] The Division denied payment for any treatment of Ms. Zheng's left foot and ankle by Dr. Son and Dr. Bloome, including the MRI of her left ankle. The Division found the current treatment to the left ankle was "disallowed as it [was] not considered reasonable and necessary medical treatment in relation to the injury on 05/26/2019 to the right foot and right ankle." The Division also denied the preauthorization request for surgery and instead scheduled Ms. Zheng for a second IME with Dr. Orth on November 24, 2020. The Division informed Ms. Zheng they would re-review the preauthorization request upon receipt of Dr. Orth's evaluation.

4

[¶15] Following Dr. Orth's November 2020 IME, he opined Ms. Zheng's current complaints were "subjective and biopsychosocial and not objective or related to the injury of 05/26/2019." Dr. Orth found the current treatment to Ms. Zheng's right ankle and foot had resolved by the time she was seen by Dr. Harlow in November 2019 and that the treatment to her left ankle symptoms in all reasonable medical probability had resolved by June 2019. Regarding the request for surgery, Dr. Orth found Ms. Zheng had complaints of pain with no objective evidence to support her complaints and surgery was not warranted.

[¶16] After the Division reviewed Dr. Orth's report, it issued a final determination for Ms. Zheng's right foot and ankle, finding "benefits for treatment to the right ankle and right foot are denied after November 25, 2020, as not being causally related to the original work injury of 05/26/2019[,]" and any further treatment "is therefore not considered reasonable or necessary in relation to the original work injury." The Division re-reviewed the preauthorization request for surgery and denied the request for the same reasons. Ms. Zheng timely objected to the Division's decisions regarding the preauthorization and its final determination regarding the right ankle and right foot. She also timely objected to the denial of payments for the treatment that she requested for her left foot and ankle more than a year after her workplace injury, which also included the denial of payment for the 2020 MRI of the left ankle.

[¶17] The Division referred its final determinations regarding twelve denials of payment for treatment to Ms. Zheng's left ankle, the denial of temporary total disability benefits, and the denial of the preauthorization request for surgery to the Medical Commission for a contested case hearing. The parties agreed to consolidate all the issues into one hearing. After holding a hearing on all issues on November 19, 2021, the Medical Commission upheld the Division's series of final determinations denying medical treatment requested for Ms. Zheng's left ankle and foot as not related to her May 26, 2019, workplace injury, ceasing temporary total disability payments, and denying the preauthorization request for surgery. The Medical Commission determined Ms. Zheng failed to meet her burden establishing: (1) treatment to her left foot and ankle was reasonable and necessary; (2) she suffered from a posterior tibialis tendon tear/injury requiring surgical intervention; and (3) she had not yet reached maximum medical improvement and was eligible for temporary total disability benefits. Ms. Zheng petitioned the district court for review of the Medical Commission's decision. The district court affirmed the decision, and Ms. Zheng timely appealed to this Court.

## STANDARD OF REVIEW

[¶18] When an appeal is taken from a district court's review of the Medical Commission's decision, we examine the case as if it came directly from the Medical Commission, "giving no special deference to the district court's decision." *Nagel v. State ex rel. Dep't of*

*Workforce Servs., Workers' Comp. Div.*, 2024 WY 15, ¶ 10, 542 P.3d 622, 626 (Wyo. 2024); *Bressler v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2023 WY 94, ¶ 12, 536 P.3d 224, 227–28 (Wyo. 2023). Our review of the Medical Commission's decision is governed by Wyoming Statute § 16-3-114(c) (LexisNexis 2023), which states in relevant part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]
>
> . . . .
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Valencia v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2024 WY 29, ¶ 11, 545 P.3d 415, 420 (Wyo. 2024) (citing *In re Vinson*, 2020 WY 126, ¶ 25, 473 P.3d 299, 308 (Wyo. 2020)).

[¶19] "A workers' compensation claimant must prove all essential elements of her claim by a preponderance of the evidence." *McBride v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 100, ¶ 15, 515 P.3d 1060, 1064 (Wyo. 2022) (quoting *Boylen v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 39, ¶ 8, 506 P.3d 765, 769 (Wyo. 2022)). When reviewing the Medical Commission's decision that a claimant did not meet her burden of proof, we apply the following standard:

> If the [Medical Commission] determined that the burdened party failed to meet her burden of proof, we will decide whether there is substantial evidence to support the [Medical

Commission's] decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the [Medical Commission] disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the [Medical Commission] could reasonably conclude as it did, based on all the evidence before it.

*Valencia*, 2024 WY 29, ¶ 12, 545 P.3d at 421 (internal citations and quotation marks omitted) (quoting *Hardy v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 42, ¶ 10, 394 P.3d 454, 457 (Wyo. 2017)).

Under the substantial evidence test, we examine the entire record to determine whether there is substantial evidence to support an agency's factual findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*McBride*, 2022 WY 100, ¶ 15, 515 P.3d at 1064 (quoting *In re Vinson*, 2020 WY 126, ¶ 26, 473 P.3d at 308).

[¶20] "Even if an agency record contains sufficient evidence to support the [Medical Commission's] decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a 'safety net' to catch other agency action that may have violated the Wyoming Administrative Procedures Act." *Nagel*, 2024 WY 15, ¶ 12, 542 P.3d at 627 (quoting *In re Vinson*, ¶ 27, 473 P.3d at 309). The arbitrary-and-capricious standard applies when "the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *McBride*, 2022 WY 100, ¶ 16, 515 P.3d at 1064 (quoting *Triplett v. State ex. rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2021 WY 118, ¶ 35, 497 P.3d 903, 911 (Wyo. 2021)) (internal quotations omitted). This standard "is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision." *Nagel*, ¶ 12, 542 P.3d at 627. "We review an agency's conclusions of law de novo and affirm only if its conclusions are in accordance with the law." *Triplett*, ¶ 35, 497 P.3d at 911 (citing § 16-3-114(c)(ii)(A)).

**DISCUSSION**

[¶21]  Ms. Zheng appeals only the Medical Commission's decision "that treatment to her left foot and ankle [was] not reasonably necessary."  She also contends the Medical Commission acted arbitrarily and capriciously when it considered an addendum to the independent medical examiner's report.  We address each argument separately.

>  ***I. Substantial evidence supports the Medical Commission's decision Ms. Zheng failed to demonstrate the medical treatment requested for her left ankle and foot more than a year following her workplace injury was related to the compensable workplace injury.***

[¶22]  Ms. Zheng challenges the Medical Commission's credibility determinations in its decision upholding the Division's denial of benefits for medical treatment to her left foot and left ankle.  The Medical Commission found Ms. Zheng's testimony was "less than credible and somewhat inconsistent throughout the medical records, specifically in her description of the mechanism of injury and location of pain."  It found its determination "hinge[d] on the weight [of] three medical experts who testified in this matter."  Ms. Zheng argues the Medical Commission's finding "is contrary to the overwhelming weight of the evidence."  She contends "[t]he overwhelming weight of the evidence [shows she] was credible, her testimony was corroborated, and it is clear [she] reported an injury to both ankles."

[¶23]  "Credibility determinations are the unique province of the [Medical Commission.]" *Stevens v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2014 WY 153, ¶ 54, 338 P.3d 921, 933 (Wyo. 2014).  "When presented with conflicting expert medical testimony, the Medical Commission determines the credibility and weight of the experts' opinions." *Valencia*, 2024 WY 29, ¶ 24, 545 P.3d at 424 (quoting *Stevens*, ¶ 36, 338 P.3d at 929.  "We will not overturn the Medical Commission's credibility determinations or its weighing of the evidence unless they are 'clearly contrary to the great weight of the evidence.'" *Id.* at ¶ 18, 545 P.3d at 422 (quoting *Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 164, ¶ 23, 291 P.3d 297, 305 (Wyo. 2012)).  In this case, the Medical Commission's determinations are not clearly contrary to the great weight of the evidence.

[¶24]  Immediately after her work-related injury, Ms. Zheng reported only right ankle injuries to her employer provided nurses.  They documented Ms. Zheng "sustained multiple injuries from the equipment hitting into her right ankle and straining her right ankle causing bruising and discomfort."  In her initial report to the Division, Ms. Zheng limited her report of injury to the right side of her body.  At her initial medical appointment and her follow-up orthopedic appointments, Ms. Zheng only reported "right ankle pain."  Ms. Zheng waited 43 days after her initial workplace injury to report a left ankle injury or left ankle

8

pain. According to Ms. Zheng's medical records, she explained to Dr. Harlow "she also injured her left ankle[, but] [t]his did not become apparent to her until after she began to see recovery in the right ankle during her participation in therapy." Ms. Zheng's testimony contradicts what she stated to Dr. Harlow. Ms. Zheng testified she had left ankle pain, but she did not immediately report the pain because she thought it would heal on its own.

[¶25] In addition to giving inconsistent reasons for her delayed reporting of her left ankle and foot symptoms, Ms. Zheng gave varying and inconsistent reports of the mechanism of her injuries to the Division, her treating physicians, and during her testimony. Ms. Zheng stated in her initial report to the Division she "hurt [her] feet bending area[,]" "one of [her] ankles," and the tool string hit her "other ankle." She explained to Dr. Harlow her right foot slipped when she jumped on the parmelee wrench and then in her subsequent attempts to free the valve her right ankle was struck three times. She explained to Dr. Son she initially hurt both of her ankles jumping on the parmelee wrench, then her left ankle was hit by the tool string, and her right ankle was later hit by the parmelee wrench. In her description to Dr. Bloome, Ms. Zheng stated she hurt both her ankles, and then was later struck on her right ankle by the tool string and the parmelee wrench. Ms. Zheng testified she first hurt both of her ankles jumping on the wrench, and then her right ankle was hit three times, but she never explained how all three injuries to her right ankle occurred.

[¶26] Dr. Orth testified from a tissue-injury standpoint it did not make sense that Ms. Zheng failed to report her symptoms of a left ankle injury to her treating physician for six weeks. He opined: "If [Ms. Zheng] had sustained an initial substantial injury to her left ankle, it would have been evident immediately [because] [s]ubstantial tissue injuries do not wait six weeks to present." Dr. Orth opined "[i]n all reasonable medical probability[,]" if [Ms. Zheng] had sustained a substantial injury to her left ankle, she would have mentioned it to the physician on the initial visit and in his opinion any injury sustained to the left ankle had resolved before her initial visit. Dr. Son testified the left ankle symptoms "could be" related to the original workplace injury, and Dr. Bloome testified he thought the left ankle complaints were related because Ms. Zheng reported no other injury other than the original workplace injury. However, Dr. Bloome was unable to explain why Ms. Zheng's left ankle was still causing her so many symptoms more than a year after the incident.

[¶27] "Medical testimony in terms of 'can,' 'could,' or 'possibly' is insufficient to meet a claimant's burden of proof." *Valencia*, 2024 WY 29, ¶ 19, 545 P.3d at 423 (quoting *Hardy*, 2017 WY 42, ¶ 12, 394 P.3d at 458). The Medical Commission found: "[T]he medical records, [Ms.] Zheng's testimony, Drs. Son's and Bloome's testimony failed to negate the written reports and contested case hearing testimony of Dr. Orth that treatment to [Ms.] Zheng's left ankle/foot was not reasonable and necessary medical care[.]" Based on Ms. Zheng's medical records, the inconsistent description of her injury to all three treating physicians, her own testimony, and the testimony of her treating physicians, the Medical Commission's findings are supported by substantial evidence.

## II. The Medical Commission acted within its discretion when it admitted the Division's Exhibit S-F, the addendum to the IME.

[¶28] In her second issue, Ms. Zheng argues the Medical Commission acted arbitrarily and capriciously when it admitted exhibit S-F, an addendum to Dr. Orth's report. Ms. Zheng contends she did not receive due process because the Division filed the addendum after the disclosure deadline, and she was not given a meaningful opportunity to have her treating physicians address the findings and conclusions contained in the addendum. Specifically, Ms. Zheng states Dr. Orth alleged in his report her "complaints of pain are related to her mental health, as opposed to a work-related injury," and she was unable to have her treating physicians address the claim or contest the opinion in a meaningful manner. The Division contends Ms. Zheng should not be allowed to raise this issue for the first time before this Court because she did not raise the issue in her appeal to the district court. The Division argues if Ms. Zheng is permitted to assert this issue for the first time on appeal, the Medical Commission's admission of the exhibit is not arbitrary and capricious because Ms. Zheng was permitted to cross-examine Dr. Orth and present rebuttal evidence.

[¶29] Ordinarily, we decline to consider an issue the claimant never raised or briefed to the district court in an administrative appeal. *Wilkinson v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 991 P.2d 1228, 1233 (Wyo. 1999) (citing *In re Zielinske*, 959 P.2d 706, 710 (Wyo. 1998)) (declining to consider an issue concerning the preclusive effect of the Medical Commission's decision because it was not raised or briefed to the district court); *see also Bush v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2008 WY 117, ¶ 13, 193 P.3d 260, 264 (Wyo. 2008) (finding the Division waived its right to raise an issue before us when it failed to raise the issue on appeal to the district court). However, because Ms. Zheng objected to the admission of the exhibit during the contested case hearing and requested to file a supplemental brief, which was denied by the district court, we will consider the merits of Ms. Zheng's claim. *See generally Watkins v. State ex rel. Wyo. Med. Comm'n*, 2011 WY 49, ¶ 22, 250 P.3d 1082, 1089 (Wyo. 2011) (finding the Medical Commission did not abuse its discretion in admitting an independent medical examination, but noting the issue was raised for the first time on appeal because the claimant did not object during the contested case hearing).

[¶30] The Medical Commission, acting in a judicial or quasi-judicial capacity, is "not bound by technical rules of evidence that govern trials by courts or juries." *Gray v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2008 WY 115, ¶ 18, 193 P.3d 246, 252 (Wyo. 2008) (quoting *Story v. Wyo. State Bd. of Med. Exam'rs*, 721 P.2d 1013, 1018 (Wyo. 1986)). "Admissibility of evidence is committed to the discretion of the hearing examiner. A hearing examiner abuses his discretion when his decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it." *Watkins*, 2011 WY 49, ¶ 21, 250 P.3d at 1089. The hearing examiner's exercise of discretion is "a composite of many things, among which are conclusions drawn from

objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Morris v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 71, ¶ 28, 276 P.3d 399, 406 (Wyo. 2012) (quoting *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 11, 77 P.3d 412, 416 (Wyo. 2003)).

[¶31]  The Medical Commission set an initial disclosure deadline for the Division of no later than September 30, 2021.  However, at the pretrial conference in October 2021, the parties were given until November 10, 2021, to supplement their disclosure statements. The Division supplemented the record before that deadline on November 8, 2021, with the addendum to Dr. Orth's IME.  Ms. Zheng's counsel cross-examined Dr. Orth about the addendum and Ms. Zheng was given the opportunity to present any evidence, including calling her treating physicians to rebut any testimony by Dr. Orth.  Further, Ms. Zheng's counsel specifically questioned Dr. Bloome during his deposition with regard to Dr. Orth's opinion that Ms. Zheng's complaints "are subjective and biopsychosocial."  Under these circumstances, we cannot find Ms. Zheng was unfairly surprised or prejudiced by the admission of the addendum. *See generally Morris*, 2012 WY 71, ¶¶ 34–35, 276 P.3d at 408 (discussing the issue of unfair surprise and prejudice is of particular importance for admissibility questions regarding expert medical testimony).  The hearing examiner's admission of Dr. Orth's addendum does not "shock the conscience of the Court" or "appear to be so unfair and inequitable that a reasonable person could not abide it." *Id.* at ¶ 35, 276 P.3d at 408 (quoting *Watkins*, 2011 WY 49, ¶ 21, 250 P.3d at 1089).  The Medical Commission did not act arbitrarily or capriciously, or abuse its discretion, by admitting the addendum labeled as exhibit S-F.

## <u>CONCLUSION</u>

[¶32]  The Medical Commission's conclusion Ms. Zheng did not meet her burden of proof showing her left ankle and foot complaints were related to her compensable workplace injury was supported by substantial evidence.  The Medical Commission did not act arbitrarily or capriciously, or abuse its discretion, by admitting the addendum to Dr. Orth's IME at the contested case hearing.  We affirm.